## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSE GARCIA, | : | |
| Plaintiff, | : | PRISONER CASE NO. |
| | : | 3:16-CV-852 (JCH) |
| v. | : | |
| | : | |
| UNIVERSITY OF CONNECTICUT | : | |
| HEALTH CARE CENTER, ET AL., | : | SEPTEMBER 29, 2016 |
| Defendants. | : | |

## INITIAL REVIEW ORDER

### I.    INTRODUCTION

The plaintiff, Jose Garcia ("Garcia"), is incarcerated at the Garner Correctional

Institution in Newtown, Connecticut.  He has filed a complaint under section 1983 of title

42 against the University of Connecticut Health Care Center ("UCONN"), the

Department of Corrections, Commissioner Scott Semple, Correctional Officers Genise,

Gray, Parnisakul, Burritt, Ross and Byars, Lieutenant Hurdle, Social Workers Marek and

Bertulis and Nurse Yerkes.  Doc. No. 1.  For the reasons set forth below, the Complaint

is dismissed in part.

### II.   LEGAL STANDARD

Pursuant to section 1915A(b) of title 28, the court must review prisoner civil

complaints against governmental actors and "dismiss ... any portion of [a] complaint

[that] is frivolous, malicious, or fails to state a claim upon which relief may be granted,"

or that "seeks monetary relief from a defendant who is immune from such relief."  Id.

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short

and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007)). Although courts have an obligation to interpret "a pro se complaint liberally," the complaint must still include sufficient factual allegations to meet the standard of facial plausibility. See Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

## III.   FACTUAL ALLEGATIONS

On May 6, 2014 at Garner, Officer Genise made repeated verbal comments to Garcia regarding his mental illness. See Compl. at 6-7. After two hours of verbal harassment, Garcia was unable to control his anger and his disruptive conduct resulted in his placement in the restrictive housing unit. See id. at 7.

Garcia informed Officer Gray, Social Workers Marek and Bertulis, and Nurse Yerkes that he had been provoked by Officer Genise and that he could not control the symptoms associated with his bi-polar and anxiety disorder. See id. He requested that Social Workers Marek and Bertulis and Nurse Yerkes prescribe medication to treat his

symptoms, but they refused to do so.  See id.  Garcia's mental health condition deteriorated, and he became irate and extremely agitated.  See id.

Officers Parnisakul and Burritt handcuffed Garcia, escorted him to a multi-purpose room, placed him in a steel cage and then escorted him to another cell.  See id. at 7-8.  When Garcia arrived at the new cell, Officers Parnisakul, Burritt, Ross, and Byars placed him in handcuffs, leg shackles, and a tether chain around his waist.  The officers applied the restraints in such a way that Garcia was unable to stand upright or use the toilet.  See id. at 8.  He was forced to urinate and defecate on himself.  See id. He remained in soiled clothes for nine hours.  See id.

When Lieutenant Hurdle came to remove the restraints, Garcia asked for a wash cloth to clean himself because he was scheduled to go to a court hearing.  See id. Lieutenant Hurdle refused to permit Garcia to clean himself off and suggested that Garcia might think twice next time about pissing off staff and threatening to file lawsuits. See id.

After Garcia arrived at the courthouse, his mental health condition deteriorated, and he attempted to hang himself in the holding cell.  See id. at 9.  Officers transported him to New Britain Hospital for treatment.  See id.  Garcia suffered injuries to his neck, head, and back.  See id.  After his return to Garner, medical staff placed him in the inpatient unit for observation.  See id.  Eventually, prison staff returned Garcia to the restrictive housing unit.  See id.

**IV.    DISCUSSION**

    A.    <u>Americans with Disabilities Act Claims</u>

Garcia generally asserts that the defendants violated his rights under Title II of the Americans with Disabilities Act ("ADA"). 42 U.S.C. § 12101, et seq.  To state a claim under the ADA, Garcia must plead "(1) that he is a qualified individual with a disability; (2) that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusions or discrimination was due to his disability."  <u>Hargrave v. Vermont</u>, 340 F.3d 27, 34-35 (2d Cir. 2003).  Most importantly, Garcia must allege that his mistreatment was motivated by either discriminatory animus or ill will due to disability.  <u>See</u> <u>Elbert v. N.Y. State Dep't of Corr. Servs.</u>, 751 F. Supp. 2d 590, 594-95 (S.D.N.Y. 2010) (citing <u>Garcia v. S.U.N.Y. Health Sciences Ctr. Of Brooklyn</u>, 380 F.3d 98, 112 (2d Cir. 2001)).  Courts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability."  <u>Id.</u> at 595 (collecting cases).

Garcia claims that he suffers from severe bi-polar and anxiety disorders and that the defendants did not properly treat his mental health conditions.  <u>See</u> Compl. at 1, 7. Garcia does not allege that the defendants excluded him from or denied him the benefits of any services, programs or activities because of his mental illness.  Rather, he asserts that his disability was not adequately treated.  Because Garcia does not allege that the defendants denied him treatment or participation in various programs or activities because of his mental illness, he fails to state a claim under the ADA.  Those claims are dismissed as to all defendants.  <u>See</u> 28 U.S.C. § 1915A(b)(1).

B.     Section 1983 Claims

Garcia alleges that the defendants violated his First and Eighth Amendment rights in various ways.  To state a claim under section 1983, Garcia must allege facts showing that the defendant, a person acting under color of state law deprived him of a federally protected right.  See Lugar v. Edmondson Oil Co., 457 U.S. 922, 930 (1982).

1.     Department of Correction and UCONN

A state agency is not a person within the meaning of section 1983.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (state and state agencies not persons within meaning of 42 U.S.C. § 1983).   The Department of Correction is a state agency.  See Vaden v. Connecticut, 557 F. Supp. 2d 279, 288 (D. Conn. 2008); Garris v. Department of Corr., 170 F. Supp. 2d 182, 186 (D. Conn. 2001).  UCONN is a also a state agency.  See Jolly v. Corr. Managed Health Care, Case No. 3:04cv1582(RNC), 2009 WL 233667, at *3 (D. Conn. Jan. 30, 2009) (Correctional Managed Health Care provides medical treatment to inmates and "is a division of a state agency, the University of Connecticut Health Center"), aff'd, 375 F. App'x 67 (2d Cir. 2010).  Like other state agencies, neither the Department of Correction, nor UCONN is a person within the meaning of section 1983.  See Gaby v. Board of Trs. of Cmty Tech. Colls., 348 F.3d 62, 63 (2d Cir. 2003) (per curiam) (noting decisions holding that state universities and their boards of trustees are not persons within the meaning of section 1983); Santos v. Dep't of Corr., 3:04CV1562(JCH)(HBF), 2005 WL 2123543, at *3 (D. Conn. Aug. 29, 2005) (observing that "[n]either a Department of Correction nor a correctional institution is a person" subject to liability under section 1983); Stewart v. John Dempsey Hosp., No. 3:03cv1703(WWE), 2004 WL 78145, at *2 (D. Conn. Jan. 9, 2004) (holding that John Dempsey Hospital University of Connecticut Health Center is

5

not a person within the meaning of section 1983).  Thus, the claims against defendants UCONN and the Department of Corrections are dismissed as lacking an arguable legal basis.  See 28 U.S.C. § 1915A(b)(1).

       2.     Official Capacity Claims

For relief, Garcia seeks monetary damages.  To the extent that Garcia seeks damages against the defendants in their official capacities, the claims are barred by the Eleventh Amendment.  See Kentucky v. Graham, 473 U.S. 159 (1985); Quern v. Jordan, 440 U.S. 332, 342 (1979).  All such claims are dismissed pursuant to section 1915A(b)(2) of title 28.

       3.     Verbal Harassment Claims

Verbal harassment and threats do not rise to the level of a constitutional violation.  See Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1986); Cotz v. Mastroeni, 476 F. Supp. 2d 332, 372 (S.D.N.Y. 2007).  Garcia's verbal harassment claims against Officer Genise are dismissed.  See 28 U.S.C. § 1915A(b)(1).

       4.     Claims Against Commissioner Semple

Commissioner Semple is not mentioned in the factual section of the Complaint. To recover money damages under section 1983, Garcia must show that the Commissioner was personally involved in the constitutional violations.  See Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).  A supervisory official cannot be held liable under section 1983 solely "on the basis of respondeat superior or simply because he is atop the prison hierarchy."  Lewis v. Cunningham, 483 F. App'x 617, 619-20 (2d Cir. 2012) (citation omitted).

Garcia may show personal involvement through allegations of one or more of the following: (1) that the defendant actually and directly participated in the alleged

6

unconstitutional acts; (2) that the defendant failed to remedy a wrong after being informed of the wrong through a report or appeal; (3) that the defendant created or approved a policy or custom that sanctioned objectionable conduct which rose to the level of a constitutional violation or allowed such a policy or custom to continue; (4) that the defendant was grossly negligent in supervising the correctional officers who committed the constitutional violation; or (5) that the defendant failed to take action in response to information regarding the occurrence of unconstitutional conduct.  See Colon, 58 F.3d at 873.  In addition, Garcia must demonstrate an affirmative causal link between the inaction of the supervisory official and his injury.  See Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 2002).

In Ashcroft v. Iqbal, the Supreme Court addressed the issue of supervisory liability and concluded that a supervisor can be held liable only "through the official's own individual actions."  556 U.S. 662, 676 (2009).  Although this decision arguably casts doubt on the continued viability of some of the categories for supervisory liability set forth in Colon, the Second Circuit, however, has not revisited the criteria for supervisory liability following Iqbal.  See Raspardo v. Carlone, 770 F.3d 97, 117 (2d Cir. 2014) ("We have not yet determined the contours of the supervisory liability test . . . after Iqbal."); Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013) (noting that decision in Iqbal "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations," but finding it unnecessary to reach the impact of Iqbal on the personal involvement requirements set forth in Colon).  Because it is unclear as to whether Iqbal overrules or limits Colon, the

Court will continue to apply the categories for supervisory liability set forth by the Second Circuit.

Garcia does not allege that Commissioner Semple was present or was otherwise involved in the incidents that occurred on May 6 and May 7, 2014.  Nor does he allege that he made the Commissioner aware of the incident after it occurred.  Furthermore, there are no allegations from which to infer that the Commissioner was grossly negligent in supervising those officers involved in the alleged unconstitutional conduct or that those officers engaged in the conduct in accordance with a policy/custom created by the Commissioner.  Thus, Garcia has failed to allege facts sufficient to state plausible claims of direct involvement of the Commissioner in the alleged misconduct or supervisory liability on the part of the Commissioner based on the misconduct of the other officers who were involved in the incidents and over whom he might have authority.  Because Garcia has failed to allege facts that show or allow an inference of personal involvement by the Commissioner in the alleged deliberate indifference to his mental health needs, his safety and his health, the unconstitutional conditions of confinement, or the retaliatory conduct, the claims against Commissioner Semple are dismissed.  See 28 U.S.C. § 1915A(b)(1).

5.     Eighth and First Amendment Claims

The court concludes that Garcia has a plausibly alleged Eighth and First Amendment claims against the remaining defendants.  Specifically, Garcia has alleged an Eighth Amendment claim that defendants Gray, Marek, Bertulis and Yerkes were deliberately indifferent to his mental health needs when they refused to prescribe him medication or treatment for his mental illness and instead punished him by placing him in restraints; and, an Eighth Amendment claim that defendants Hurdle, Parnisakul,

8

Burritt, Ross and Byars were deliberately indifferent to his safety and health and subjected him to unconstitutional conditions of confinement when they facilitated his placement in in-cell restraints and/or applied the restraints in such a manner as to cause him pain and prevent him from standing upright or using the toilet and a First Amendment claim that defendants Hurdle, Parnisakul, Burritt, Ross and Byars placed him in in-cell restraints for nine hours in retaliation for his statement that he planned to file a lawsuit against the mental health staff at Garner.  These claims will proceed against defendants Hurdle, Parnisakul, Burritt, Ross, Byars, Gray, Marek, Bertulis and Yerkes in their individual capacities.

## V.    CONCLUSION

For the above stated reasons, the court enters the following orders:

(1)    The ADA claims, the section 1983 claim of verbal harassment against defendant Genise and the section 1983 claims against defendants Semple, UCONN and the Department of Corrections are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).   The claims for monetary damages against all defendants are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2).  Thus, all claims against defendants Genise, Semple, UCONN and the Department of Corrections have been dismissed. The Eighth Amendment deliberate indifference to mental health needs, safety and health and the unconstitutional conditions of confinement claims will proceed against defendants Hurdle, Parnisakul, Burritt, Ross, Byars, Gray, Marek, Bertulis and Yerkes in their individual capacities and the First Amendment retaliation claim will proceed against Hurdle, Parnisakul, Burritt, Ross and Byars in their individual capacities.

(2)     **Within twenty-one (21) days of this Order**, the Clerk shall ascertain

from the Department of Correction Office of Legal Affairs the current work addresses for

defendants Correctional Officers Genise, Gray, Parnisakul, Burritt, Ross and Byars,

Lieutenant Hurdle, Social Workers Marek and Bertulis, and Nurse Yerkes and mail a

waiver of service of process request packet to each defendant in his or her individual

capacity at his or her current work address.  On the thirty-fifth (35th) day after mailing,

the Clerk shall report to the court on the status of all the requests.  If any defendant fails

to return the waiver request, the Clerk shall make arrangements for in-person service by

the U.S. Marshals Service and such defendants shall be required to pay the costs of

such service in accordance with Federal Rule of Civil Procedure 4(d).

(3)     Defendants shall file their response to the Complaint, either an answer or

motion to dismiss, **within sixty (60)** days from the date the Notice of Lawsuit and

Waiver of Service of Summons forms are mailed to them.  If the defendants choose to

file an answer, they shall admit or deny the allegations and respond to the cognizable

claims recited above.  They may also include any and all additional defenses permitted

by the Federal Rules.

(4)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37,

shall be completed **within six months (180 days)** from the date of this Order.

Discovery requests need not be filed with the court.

10

(5)     All motions for summary judgment shall be filed **within seven months (210 days)** from the date of this Order.

**SO ORDERED**

Dated at New Haven, Connecticut this 29th day of September, 2016.


 /s/ Janet C. Hall
Janet C. Hall
United States District Judge