UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSE GARCIA | : | No. 3:16-cv-00852 (JCH) |
| | : | |
| v. | : | |
| | : | |
| UNIVERSITY OF CONN., ET AL. | : | SEPTEMBER 8, 2017 |

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF SUMMARY JUDGMENT

**I.    INTRODUCTION**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendants

Correction Officers Gray, Parnishkul, Burritt, Ross and Byars, Lieutenant Hurdle, Social

Workers Marek and Bertulis and Nurse Yerkes (collectively referred to as "defendants")

respectfully move for summary judgment to enter in their favor. Specifically, the

defendants are entitled to summary judgment because *pro se* inmate plaintiff Jose

Garcia ("plaintiff") has failed to state a claim for relief as a matter of law as to the

violation of his constitutional rights under the Eighth Amendment and First Amendment.

The defendants are further entitled to summary judgment because in their individual

capacity they acted reasonably and with good faith belief that under the circumstances

they were acting lawfully and are entitled to qualified immunity. The defendants also

submit that plaintiff's claims are barred due to his failure to exhaust available

administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C.

§1997e(a). As the attached Local Rule 56(a)(1) Statement of Material Facts and

supporting documentation demonstrate, the defendant did not violate plaintiff's

constitutional rights and there are no genuine issues of material fact in dispute which are sufficient to defeat summary judgment.

## II.   PROCEDURAL BACKGROUND

Though executed November 27, 2015, plaintiff eventually filed his complaint under section 1983 of title 42 against the above named defendants on June 2, 2016. ECF # 1. The court conducted an initial review of claims made against the defendant on September 29, 2016. ECF # 7. The only claims the court permitted to proceed against the defendants were:

        a.  Eighth Amendment deliberate indifference to mental health needs, safety and health and unconstitutional conditions of confinement against Hurdle, Parnishkul, Burritt, Ross, Byars, Gray, Bertulis and Yerkes, in their individual capacity; and

        b.  First Amendment retaliation claim against Hurdle, Parnishkul, Burritt, Ross and Byars, in their individual capacity.

The parties engaged in discovery. The defendants now move for summary judgment.

## III.   DEFENDANTS' UNDISPUTED FACTS

The defendants' undisputed facts are contained in the Defendants' Local Rule 56(a)(1) Statement of Material Facts in Support of Summary Judgment ("R56"). Attachment A.

## IV.   FACTS

On May 6, 2014, a correction officer verbally harassed plaintiff regarding his mental illness. ECF # 1, at 6-7. After two hours of this harassment, plaintiff claims he

was unable to control himself and became more disruptive in the unit. Id. at 7. Plaintiff asserts he was then placed in restrictive housing. Id.

Plaintiff alleges he informed Correction Officer Gray, Social Workers Marek, Bertulis and Nurse Yerkes that he could not control the symptoms associated with his bi-polar and anxiety disorder. Id. Plaintiff claims to have requested Social Workers Marek and Bertulis and Nurse Yerkes to prescribe medication to treat his symptoms, but they refused to do so. Id. As a result, plaintiff states he was unable to control the symptoms associated with his mental illness and became extremely agitated and eventually irate. Id.

Plaintiff next asserts that Officers Parnishkul and Burritt handcuffed him, escorted him to a multi-purpose room, placed in a steel cage and then escorted to another cell. Id., at 7 – 8. When placed in this cell, plaintiff alleges Officers Parnishkul, Burritt, Ross and Byars placed him handcuffs, leg shackles, and a tether chain that was short which caused him to be unable to stand upright or use the toilet. Id. at 8. As a result, plaintiff avers that he was forced to urinate and defecate on himself. Id. Plaintiff states he remained in soiled clothes from 8:00 p.m. through 5:00 a.m. Id.

Plaintiff claims that Hurdle arrived around 5:00 a.m. to remove the restraints. Id. Plaintiff declares that he requested a washcloth to clean himself before going to court. Id. Plaintiff states Hurdle denied his request and suggested that plaintiff think twice about pissing off staff and threatening lawsuits. Id.

3

Plaintiff indicates he arrived at the courthouse and because the symptom of bi-polar and anxiety disorder had worse and he was not provided any medication, it became impossible to control himself. Id. at 9. The culmination of these events caused him to attempt suicide in the holding cell at the courthouse. Id. Plaintiff was then transported to a hospital for treatment. Id. Plaintiff claims to have suffered injuries to his neck, head and back. Id. Upon his return to the facility, plaintiff states staff returned him to restrictive housing unit. Id.

Plaintiff seeks compensatory and punitive damages. Id. at 11-12.

## V.    LEGAL STANDARD

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Rule 56(c), Fed. R. Civ. P.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact ...." Miner v. City of Glens Falls, 999 F.2d 655, 661 (2d Cir.1993) (citation omitted). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson, 477 U.S. at 248, 106 S. Ct. 2505), cert. denied, 506 U.S. 965, 113 S. Ct. 440, 121 L.Ed.2d 359 (1992). After discovery, if the nonmoving party "has failed to make a sufficient

4

showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party." Aldrich, 963 F. 2d at 523. In opposing a motion for summary judgment, the "adverse party may not rest upon the mere allegation or denials in [its] pleadings," but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; see also D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998). Further, the mere verification by affidavit of one's own conclusory allegations is not sufficient to oppose a motion for summary judgment." Zigmund v. Foster, 106 F. Supp. 2d 352, 356 (D. Conn. 2000). Hearsay or other evidence that would be inadmissible at trial cannot be credited to defeat a summary judgment motion. Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004).

VI.   **LEGAL ARGUMENT**

Plaintiff alleges that defendants Officer Gray, Social Workers Marek, Bertulis and Nurse Yerkes were deliberately indifferent to his mental health needs when they refused to prescribe him medication or treatment for his mental illness and instead punished him by placing him restraints. Plaintiff also claims defendants Lieutenant Hurdle, Officer Parnishkul, Burritt, Ross and Byars were deliberately indifferent to his safety and health and subjected him to unconstitutional conditions of conferment when they placed him in in-cell restraints and short-chained him thereby causing him to be unable to stand

upright or use the toilet. Plaintiff also claims defendants Hurdle, Parnishkul, Burritt, Ross and Byars placed him in in-cell restraints from 8:00 p.m. until 5:00 a.m. in retaliation for his statement that he planned to file a lawsuit against mental health staff at Garner.

The defendants move this court to grant summary judgment in their as to all claims raised by plaintiff in his complaint.

A.    **Failure to Exhaust Administrative Remedies**

Plaintiff claims to have exhausted administrative remedies. However, this lawsuit is barred in total because plaintiff has failed to exhaust his administrative remedies before bringing this action against the defendants.

The PLRA requires inmates to exhaust available administrative remedies before filing an action in federal court concerning any aspect of prison life. Porter v. Nussle, 534 U.S. 516, 532 (2002). An inmate must exhaust any such remedies, regardless of whether they provide the relief the inmate seeks. See Booth v. Churner, 532 U.S. 731, 741 (2001). A claim is not exhausted until the inmate complies with all administrative deadlines and procedures. See Woodford v. Ngo, 548 U.S. 81, 90 (2006). Informal efforts to put prison officials on notice of inmate concerns do not satisfy the exhaustion requirement. See Marcias v. Zenk, 495 F.3d 37, 43 (2d Cir. 2007). If the deadline to file a grievance has passed, an unexhausted claim is barred from federal court. See Woodford, 548 U.S. at 95. In addition, the inmate must exhaust his administrative remedies for each claim he asserts in federal court. See Baldwin v. Arnone, No. 3:12cv243(JCH), 2013 WL 628660, at *5 (D. Conn. Feb. 18, 2013).

6

An inmate may be excused from the exhaustion requirement only if administrative remedies were not in fact available. Ross v. Blake, ——U.S. ——, 136 S. Ct. 1850, 1858 (2016). The Supreme Court has identified three circumstances where an administrative remedy, although officially available, cannot be used by inmates to obtain relief. Id. at 1859. First, the administrative remedy may operate as a "dead end," such as where the office to which inmates are directed to submit all grievances disclaims the ability to consider them. Id. Second, the procedures may be so confusing that no ordinary prisoner could be expected to "discern or navigate" the requirements. Id. Third, prison officials may "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

The Department of Correction grievance procedures are set forth in its Administrative Directive 9.6. As noted in § 6(A), the procedures require an inmate first to seek informal resolution of the issue in writing, using an Inmate Request Form. The appropriate correctional official has fifteen days to respond to the Inmate Request. If the inmate is not satisfied with the response, the inmate must file a grievance and attach the Inmate Request Form containing the response, according to § 6(C). The inmate must file the grievance within thirty days of the date of the cause of the grievance. The Unit Administrator has thirty days to respond to the grievance. If the inmate is not satisfied with the response, or no response is provided within the thirty days, the inmate may file a grievance appeal.

7

A similar procedure exists for complaints regarding medical care and treatment. See Exhibit 10, Administrative Directive 8.9, Administrative Remedy for Health Services, effective date July 24, 2012. If an inmate is upset about the conduct of a health services provider or questions the treatment received, he is to an inmate administrative remedy form and check the appropriate box for this issue to be addressed. Id.

The defendants submit that plaintiff has presumably exhausted his administrative remedies as to custody defendants. However, custody defendants assert the subject matter of each grievance is wholly unrelated to the claims asserted against them in the complaint and, as a result, all claims against custody defendants should be dismissed. In support of this position, custody defendants submit evidence that on May 15, 2014, nine days after the incident of May 6, plaintiff filed an inmate administrative remedy form whose sole focus was with respect to custody's general use of a "3 point restraint". **Rule 56 (R56), ¶ 95.** The grievance was denied based on the fact that custody does not utilize 3 point restraints. **Id.** The appeal was denied as well. **Id.** (Clearly plaintiff is well familiar with the procedural process involved in pursuing grievances.) Plaintiff's concern with custody's policy of using 3 point restraints is totally unrelated to his claim that he had been short chained by defendants in retaliation for stating he would pursue a lawsuit against mental health staff. There is no evidence plaintiff exhausted his remedies as to the aforementioned allegations against the custody defendants.

Additionally, plaintiff another grievance filed by the plaintiff focused on the untimely investigation into the institutional violations raised in the disciplinary reports he

8

received on May 6. **R56, ¶ 95.** The grievance was denied as the process set forth in A.D. 9.5 was followed. **Id.** The appeal was denied as well. **Id.** Yet there are no claims of this nature alleged against the defendants in his complaint. None of the defendants were involved in the investigation process. Indeed plaintiff has failed to exhaust available administrative remedies regarding the claims asserted against the custody defendants in his complaint.

A claim is not exhausted until the inmate complies with all administrative deadlines and procedures. Grievances regarding medical care and treatment and misconduct of are additional remedies available to plaintiff for complaints of staff misconduct. Plaintiff alleges that the mental health staff was deliberately indifferent to his serious medical needs when they failed to provide medication he requested of them. However, plaintiff's medical file, which contains a section for filing grievances, does not contain any grievances regarding the alleged misconduct of the mental health staff on May 6, 2014. **R56, 78.** Presumably, plaintiff was accepting of the treatment and conduct received by the mental health staff on May 6, 2014. The mental health defendants submit plaintiff has not exhausted available administrative remedies for each claim he has asserted against them in the complaint. Accordingly, the defendants move this court to grant summary judgment in their favor.

### B.   Deliberate Indifference

The Supreme Court has held that deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of

the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L.Ed.2d 251 (1976). To prevail on such a claim, a plaintiff must provide evidence of sufficiently harmful acts or omissions and intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel. 429 U.S. at 104–06, 97 S. Ct. 285. "[T]he Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law." Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir.2003). "[N]ot every lapse in prison medical care will rise to the level of a constitutional violation." Id. "Mere negligence will not support such a claim under section 1983; there must be some conduct that 'shocks the conscience' or a 'barbarous act.' " McCloud v. Delaney, 677 F. Supp. 230, 232 (S.D.N.Y.1988) (citing United States ex rel. Hyde v. McGinnis, 429 F.2d 864 (2d Cir.1970)). See also Wesolowski v. Kamas, 409 Fed. Appx. 476, 477 (2d Cir.2011) ("Deliberate indifference 'entails something more than mere negligence.' ") (quoting Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994)).

In sum, "[t]o succeed on an Eighth Amendment deliberate indifference claim, a plaintiff must satisfy two requirements[:] [h]e must show both that the danger posed by the indifference he alleges is 'sufficiently serious' and that the defendant has acted with 'deliberate indifference to inmate health or safety' in failing to address this danger." Smith v. Fischer, 500 Fed. Appx. 59, 61 (2d Cir.2012) (citing Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir.2002)).

There are thus both subjective and objective components to the "deliberate indifference" standard. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir.1994), cert. denied sub nom., Foote v. Hathaway, 513 U.S. 1154, 115 S. Ct. 1108, 130 L.Ed.2d 1074 (1995). Objectively, the alleged deprivation must be "sufficiently serious." Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Such a "condition of urgency ... may produce death, degeneration or extreme pain." See Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir.1996) (citing Hathaway, 37 F.3d at 66). Subjectively, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his actions or inactions. Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir.2006). "More specifically, a prison official does not act in a deliberately indifferent manner unless that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " Hathaway, 37 F.3d at 66 (quoting Farmer, 511 U.S. at 837, 114 S. Ct. 1970). The fact that a prison official did not alleviate a significant risk that he *should have but did not perceive* does not constitute deliberate indifference. Farmer, 511 U.S. at 838, 114 S. Ct. 1970 (emphasis added).

The Second Circuit has identified several factors that are highly relevant to the inquiry into the seriousness of a medical condition. Such factors "include whether 'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes

11

'chronic and substantial pain.' " Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir.2006) (quoting Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir.1998)). In addition, where the denial of treatment "result[s] in further significant injury or the unnecessary and wanton infliction of pain," the medical need is considered "serious." See Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir.2000) (quoting Chance, 143 F.3d at 702). See also Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir.1997) ("A 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

The second prong of "deliberate indifference" requires the prisoner "to prove that the prison official knew of and disregarded the [prisoner's] serious medical needs." Chance, 143 F. 3d at 702. Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle, 429 U.S. at 104, 97 S. Ct. 285. Wesolowski, 409 Fed. Appx. at 477 ("A prison official acts with deliberate indifference when he *knows of and disregards* an excessive risk to inmate health or safety.' ") (emphasis added) (quoting Farmer, 511 U.S. at 837, 114 S. Ct. 1970); see also Lewis v. Cunningham, 483 Fed. Appx. 617, 619 (2d Cir.2012) (same). A difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference. Chance, 143 F.3d at 703. "Nor does the fact that an inmate might prefer an alternative treatment, or feels that he did not get the level of medical attention he preferred." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F.Supp.2d 303, 311

(S.D.N.Y.2001) (citing <u>Dean v. Coughlin</u>, 804 F.2d 207, 215 (2d Cir.1986). "In the context of allegations of inadequate medical care under the Eighth Amendment, [the Second Circuit has] held that '[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.' ") (quoting <u>Chance</u>, 143 F.3d at 703). See also <u>Sonds</u>, 151 F.Supp.2d at 311 ("As long as the medical care is adequate, there is no Eighth Amendment violation.").

"As there is 'no sound underlying distinction between the right to medical care for physical ills and its psychological or psychiatric counterpart,' <u>Bowring v. Godwin</u>, 551 F. 2d 44, 47 (4th Cir. 1977), the 'deliberate indifference' standard of <u>Estelle v. Gamble</u> is equally applicable to the constitutional adequacy of psychological or psychiatric care provided at a prison." <u>Guglielmoni v. Alexander,</u> 583 F. Supp. 821, 826 (D. Conn. 1984) (citing 583 F. Supp. 821, 826 (D. Conn. 1984) (citing <u>Inmates of Allegheny County Jail v. Pierce,</u> 612 F. 2d 754, 763 (3d Cir. 1979)).

In the case at hand, plaintiff alleges an Eighth Amendment claim against mental health defendants Marek and Bertulis and Nurse Yerkes for their refusal to prescribe him medication or treatment for his mental illness and instead punished him by placing him in restraints. While plaintiff may have been diagnosed with a mental illness that is "serious", which the defendants submit is not, plaintiff is unable to prove that these defendants were deliberately indifferent to his mental health needs as evidence in a review of the video tapes that have been filed under seal.

There is absolutely no evidence plaintiff can produce to prove the mental health defendants refused to provide him medication. There is no evidence that plaintiff requested medication from any of the mental health defendants, as reflected on the video recording. Though difficult to hear any conversation that took place on the video between plaintiff and these defendants, there is no indication that medication had been asked of them. The mental health defendants recorded their interaction with plaintiff. **R56, ¶ 63, ¶ 70, ¶ 72.** None of their notes reflect plaintiff made any such request for medication. **Id.**. Additionally, if medication was asked of them, these mental health defendants had no authority to administer medication but would have talked to someone who had the authority to provide him with medication. **R56, 74.** Furthermore, their presence in the unit, as verified on the video, was to ascertain whether custody could proceed with corrective measure that would halt plaintiff's disruptive behavior in the unit. The plaintiff has presented no evidence that these defendants were aware of a substantial risk that plaintiff would suffer serious harm as a result of their actions or inactions. Accordingly, the mental health defendants move this court to grant summary judgment in their favor as to plaintiff's claim of deliberate indifference.

The only involvement Nurse Yerkes had with plaintiff on May 6, 2014, was to check the application of the in-cell restraints (i.e., were the restraints applied to tightly or too loose). This is clearly evidence by a review of the video submitted under seal. Though the restraints were checked, she did not ask plaintiff to stand to determine whether the chain length enabled him to move about the cell and use a toilet. Arguably

this was a lapse in prison medical care but this omission does not rise to the level of a constitutional violation. As noted above, mere negligence will not support a claim under section 1983, as her omission would not shock the conscience' or be considered a 'barbarous act. Yerkes omission certainly does not rise to that level for purposes of liability. Despite the lack of having plaintiff stand after restrained, there is sufficient evidence that plaintiff's activities were monitored by staff on a consistent basis. **R56, ¶ 24.** Presumably, plaintiff was accepting of the chain length as he offered no complaints to anyone from 8:00 p.m. to 5:00 p.m. **Id.** Accordingly, defendant Yerkes moves this court to enter summary in her favor regarding plaintiff's allegation that she was deliberately indifferent to his serous medical need.

## C.    Conditions of Confinement

Plaintiff claims he was forced to defecate on himself due to an alleged inability to use the toilet while on in-cell restraint status for a period of nine hours. However, as the evidence and law establish, the defendants are entitled to summary judgment on these alleged violation of his condition of confinement.

Under the Eighth Amendment, prisoners are only entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F. 2d 118, 125 (2d Cir. 1978). Further, it is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. See Helling v. McKinney, 509 U.S. 25, 31, 113 S. Ct. 2475, 125 L.Ed.2d 22 (1993); see also Rhodes v. Chapman, 452 U.S. 337, 351, 101 S.

15

Ct. 2392, 69 L.Ed.2d 59 (1981). In order for prison conditions to rise to the level of an Eighth Amendment violation there must be a situation involving "unnecessary and wanton infliction of pain" which deprives inmates of the minimal necessities of life. Rhodes v. Chapman, 452 U.S. at 346-47. There is no static test for determining whether conditions of confinement are cruel and unusual Rhodes, 452 U.S. at 346. The Eighth Amendment must "draw its meaning from the evolving standards of decency that mark the progress of a maturing society." Id.

An inmate may prevail on an Eighth Amendment claim "only where he proves both an objective element—that the prison officials' transgression was 'sufficiently serious'—and a subjective element—that the officials acted, or omitted to act, with a 'sufficiently culpable state of mind,' i.e., with 'deliberate indifference to inmate health or safety.' " Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir.2002) (quoting Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994)). The objective element is satisfied where the inmate shows that the deprivation he alleges is sufficiently serious, i.e., that his confinement under the alleged conditions violates contemporary standards of decency. The subjective element requires the inmate to show that correctional officials were aware of and disregarded a substantial risk of serious harm. See id. at 185–86. The defendants "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and ... must also draw that inference." Farmer, 511 U.S. at 837.

16

In this case, the evidence by way of the declarations and restraint checklists show that plaintiff fabricated this claim. **R56, ¶ 74.** Even if true, the denial of hygiene products for nine hours does not constitute the denial of the minimal civilized measure of life's necessities. See <u>Harris v. Fleming</u>, 839 F.2d 1232, 1235 (7th Cir.1988) (denial of toilet paper for five days and soap, toothpaste and toothbrush for ten days not of constitutional dimension); <u>Martin v. Lane</u>, 766 F. Supp. 641, 648 (N.D.Ill.1991) (denial of sanitary and hygiene living conditions for between three and eighteen days does not violate Eighth Amendment). Accordingly, the defendants move this court to grant summary judgment in their favor as to plaintiff's claim of a violation of his conditions of confinement.

In addition to the foregoing, plaintiff also argues that he was short chained while on in-cell restraint status subjected him to unconstitutional conditions of confinement. In this case, the evidence by way of the declarations and restraint checklists show that plaintiff also fabricated this claim. The video evidence clearly shows that after the in-cell restraints were applied, the restraints had been checked by a member from the medical staff. **R56, ¶ 44.** Though he was not asked to stand, presumably the restraints were acceptable to him as there is no evidence he offered any complaints to staff when tours were conducted every 15 minutes. **R56, 24.** Further, the restraint checklist reflects plaintiff had the ability to pace within his cell and was observed resting on his bed throughout the 9 hours in which he was in in-cell restraints. **Id.** Accordingly, plaintiff's claim is without merit.

17

The maintenance of prison order and security are legitimate governmental objectives. Accordingly, use of restraints that are reasonably related to maintaining prison security, without more, does not violate the Eighth Amendment. See Dolphin v. Manson, 626 F.Supp. 229, 234 (D.Conn.1986) (citing Bell v. Wolfish, 442 U.S. 520, 540 (1979)). When reviewing the use of restraints under the Eighth Amendment, the court must consider the individual circumstances surrounding the use of restraints, including the length of time restraints were imposed and the objective sought to be served. See Ferola v. Moran, 633 F.Supp. 814, 820–21 (D.R.I.1985).

The video clearly shows the acutely disruptive behavior of plaintiff on May 6, 2014. Plaintiff covered his window with toilet paper when housed in F-124. The plaintiff disregarded repeated orders and efforts by correctional staff to persuade him to remove the obstructions. The plaintiff threw water out from under his door and onto the tier. The water was eventually shut off to his cell. The defendants have provided evidence that the decision made by a supervisor, and not them, to utilize in-cell restraints was intended to control the plaintiff's disruptive behavior, not to impose unnecessary punishment or the wanton infliction of pain. The video evidence documents the correctional staff's compliance with the departmental procedures regarding imposition of the restraints and the required periodic medical checks during the time the restraints were in use. Other courts have found that similar uses of restraints did not violate the Eighth Amendment. See, e.g., LeMaire, 12 F.3d at 1460 (holding that use of in-cell or four-point restrains in accordance with prison directives, even for extended periods of

time, does not constitute an Eighth Amendment violation); Bruscino v. Carlson, 854
F.2d 162, 166 (7th Cir.1988) (holding that handcuffs, shackles and four-point restraints
are reasonable measures to maintain order when dealing with violent inmates), *cert.*
*denied,* 491 U.S. 907, 109 S.Ct. 3193, 105 L.Ed.2d 701 (1989); see also Parks v.
Williams, 157 Fed. Appx. 5, 6 (9th Cir.2005) (noting that prison security measure taken
for the protection of prison officials and the inmate population is constitutional if applied
in good faith and not used maliciously). The defendants submit that the video evidence
demonstrates that the defendants followed departmental procedures and did not act
maliciously or with deliberate indifference to his serious needs. Accordingly, plaintiff's
claim is without merit and the defendants move this court to grant summary judgment in
their favor.

### D.    Retaliation

Plaintiff claims that defendants Hurdle, Parnishkul, Burritt, Ross and Byars
placed him on in-cell restraints for nine hours in retaliation for his statement that he
planned to file a lawsuit against the mental health staff at Garner. This allegation is
false.

To survive summary judgment on a claim of retaliation, plaintiff must demonstrate
genuine issues of material fact exist regarding the following: (1) he engaged in
protected speech or conduct; (2) the defendant took adverse action against him; and (3)
a causal connection existed between the protected speech and the adverse action. See
Espinal v. Goord, 558 F. 3d 119, 128 (2d Cir. 2009). The "adverse action" taken must

be "meaningfully" and objectively adverse in that it would deter a similarly situated individual of "ordinary firmness" from exercising the constitutional right. Gill v. Pidlypchak, 389 F. 3d 379, 380-81 (2d Cir. 2004) (citations omitted). With respect to the last prong, plaintiff must show "his punishment was motivated, in whole or in party, by his conduct-in other words, that the prison officials' actions were substantially improper retaliation." Graham v. Henderson, 89 F. 3d 75, 79 (2d Cir. 1996). To prevail on this claim, plaintiff must also show by a preponderance of the evidence that the defendants were "personally involved – that is, [they] directly participated – in the alleged constitutional deprivations." Grosnowski v. Spencer, 424 F. 3d 285, 293 (2d Cir. 2005); see also Wright v. Smith, 21 F. 3d 496, 501 (2d Cir. 1994).

Once a plaintiff has proved there are genuine issues of material fact on all three of the elements of a retaliation action, the burden shifts to the defendant to prove that the plaintiff would have received the same treatment "even in the absence of the protected conduct." Graham, 89 F.3d at 79 (citing Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L.Ed.2d 471 (1977)). "[I]f taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone." Id. (citations omitted). The Second Circuit has recognized that this defense is often appropriately applied in the context of prison administration. Sher v. Coughlin, 739 F.2d 77, 82 (2d Cir.1984) (noting that a finding of sufficient proper reasons under Mount Healthy "is readily drawn in the context of prison administration where we have been cautioned to recognize that 'prison

officials have broad administrative and discretionary authority over the institutions they manage.' ") (quoting <u>Hewitt v. Helms</u>, 459 U.S. 460, 467, 103 S. Ct. 864, 74 L.Ed.2d 675 (1983), receded from on other grounds by <u>Sandin v. Conner</u>, 515 U.S. 472, 481– 84, 115 S. Ct. 2293, 132 L.Ed.2d 418 (1995).

Courts examine prisoner retaliation claims with "particular care," because they can be easily fabricated. <u>Colon v. Coughlin</u>, 58 F.3d 865, 872 (2d Cir.1995) (citation omitted). Prisoner plaintiffs may rely on circumstantial evidence to prove their retaliation claims, such as temporal proximity of events, but in doing so, the plaintiff also must usually provide some non-conclusory evidence that raises an inference of "retaliatory animus" in order to proceed to trial. <u>See cf.</u> <u>id</u>. at 873 (noting that the Court would have granted summary judgment if the only evidence of retaliation had been plaintiff's good behavior and temporal proximity between the lawsuit and the disciplinary charges but plaintiff was entitled to a trial because he provided evidence that the disciplinary charge was based on false information); see also <u>Faulk v. Fisher</u>, 545 Fed. Appx. 56, 58–59 (2d Cir.2013) (affirming grant of summary judgment where plaintiff failed to provide any evidence, circumstantial or otherwise, of retaliatory intent); <u>Bennett v. Goord</u>, 343 F.3d at 138–39 (2d Cir.2003) (noting that direct evidence of retaliatory intent may not be required where the circumstantial evidence is "sufficiently compelling").

Based on the evidence presented by the defendants, there can be room for little doubt that the retaliation claim against the defendants has been fabricated. First, Hurdle was not present during the in-cell restraint process; how could he then retaliate against

plaintiff? **R56, ¶ 83.** Second, the use of in-cell restraints was authorized by a lieutenant; none of the defendant officers made that call. **R56, ¶ 15.** Third, Byars was not involved in the process of applying the in-cell restraints; clearly he could not retaliate against plaintiff. **R56, ¶ 12.** Further, several of the defendants do not even arrive in the unit until plaintiff is to be escorted to F-125. The video clearly reflects no communication between plaintiff or custody. Indeed, the retaliation claim is false and one that clearly conjured afterwards to bolster his claim against the defendants. In truth be told, plaintiff is unable to prove otherwise. Accordingly, the defendants move this court to grant summary judgment in their favor as to plaintiff's claim of retaliation.

### E.   Qualified Immunity

Qualified immunity protects officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009)(citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). It "affords government officials 'breathing room' to make reasonable—even if sometimes mistaken decisions." Distiso v. Cook, 691 F.3d 226, 240 (2d Cir. 2012)(quoting Messerschmidt v. Millender, 132 S. Ct. 1235, 1249 (2012)). Qualified immunity balances the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. It is said, therefore, that qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." Messerschmidt, 132 S. Ct. at

1244; see also <u>Mullenix v. Luna</u>, 136 S. Ct. 305, 308 (2015)(quoting <u>Malley v. Briggs</u>,

475 U.S. 335, 341 (1986)).  It applies regardless of whether the officials' error is "a

mistake of law, a mistake of fact, or a mistake based on mixed questions of law and

fact." <u>Groh v. Ramirez</u>, 540 U.S. 551, 567 (2004)(Kennedy, J., dissenting)(citing <u>Butz v.</u>

<u>Economou</u>, 438 U.S. 478 (1978)).

Because qualified immunity is "an *immunity from suit* rather than a mere defense

to liability . . . it is effectively lost if a case is erroneously permitted to go to trial."

<u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985)(emphasis in original).  The "driving force"

behind the doctrine is to ensure that "insubstantial claims against government officials

be resolved prior to discovery." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 n.2 (1987).

Accordingly, the Supreme Court has repeatedly "stressed the importance of resolving

immunity questions at the earliest possible stage in litigation." <u>Hunter v. Bryant</u>, 502

U.S. 224, 227 (1991).  In determining whether a defendant is immune, the court need

not decide whether there is a constitutional violation before deciding the clearly

established or objectively reasonable aspects of the immunity. <u>Pearson,</u> 555 U.S. at

236.[1]

---

[1] In 2009, the Supreme Court held that consistent "with our usual reluctance to decide
constitutional questions unnecessarily" the question of whether a reasonable official
would know that their conduct violates clearly established law can be considered by a
court without the court first necessarily deciding that a constitutional violation has
occurred. *Pearson v. Callhan,* 555 U.S. 223, 231 (2009).  At the point at which the case
law predating *Pearson* considers those issues related to qualified immunity, it often
undertakes the analysis assuming a constitutional violation has occurred.  Since
*Pearson,* however, the analysis has changed and it need not be assumed that *any*

"For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002); Walker v. Schult, 717 F. 3d 119, 125 (2d Cir. 2013). The right must have been recognized "not as a broad general proposition . . . but in a particularized sense so the contours of the right are clear to a reasonable official." Reichle, Jr. v. Howards, 132 S.Ct. 2088, 2094 (2012). "This clearly-established standard protects the balance between vindication of constitutional rights and government officials' effective performance . . . by ensuring that officials can reasonably anticipate when their conduct may give rise to liability for money damages." Id. at 2093.

"As the Supreme Court has explained, 'a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" Estate of Devine v. Fusaro, No. 3:14-CV-01019 (JAM), 2016 WL 183472, at *5 (D. Conn. Jan. 14, 2016)(appeal filed)(quoting Plumhoff v. Rickard, 134 S. Ct. 2012, 2023 (2014)).

The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." Mullenix, 136 S. Ct. at 308 (quoting al–Kidd, supra, at 742). "The dispositive question is 'whether the violative nature of

constitutional violation has occurred, which modifies the analysis of some cases predating Pearson.

24

*particular* conduct is clearly established." Mullenix, 136 S. Ct. at 308 (emphasis in original)(quoting al–Kidd, supra, at 742).  "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" Mullenix, 136 S. Ct. at 308 (quoting Brosseau v. Haugen, 543 U.S. 194, 198 (2004)(per curiam); *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

The constitutional question must have been "placed . . . beyond debate" in order to find the law so clearly established that an official is not entitled to qualified immunity. This Circuit has set forth criteria indicative of a clearly established right:  "(1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable Circuit court support the existence of the right . . . ; and (3) whether under pre-existing law a reasonable . . . official would have understood that his . . . acts were unlawful." Jermosen v. Smith, 945 F.2d 547, 550 (2d Cir. 1991); Doninger v. Niehoff, 642 F.3d 334, 345 (2d Cir. 2011)(internal citations omitted).  "The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in [the] defendant's position should know about the constitutionality of the conduct." Coollick v. Hughes, 699 F.3d 211, 220 (2d Cir. 2012)(internal quotations omitted, brackets in original).

Qualified immunity attaches when it was objectively reasonable for the officer to believe that his conduct did not violate a clearly established right, that is, whether officers of reasonable competence could disagree as to the lawfulness of such conduct. Manganiello v. City of New York, 612 F.3d 149, 165 (2d Cir. 2010).

There is no question that inmates have an Eighth Amendment right to be free from cruel and unusual punishment. There is no question that inmates have an Eighth Amendment right to receive medical care and treatment. However, it was objectively reasonable for the mental health nurses to communicate with plaintiff regarding his mental state, but the administration of medication is beyond their authority. It was objectively reasonable for defendant officers: to follow procedure of placement of an inmate in restrictive housing while restrained; to follow procedure of escorting an inmate to a therapeutic cell until additional staff arrived to assist in the process of placing an inmate in in-cell restraints; to follow procedure for the placement of in-cell restraints on an inmate all at the direction of a supervisor who, based on the acutely disruptive behavior of inmate, justified the supervisor's action. Reasonable minds cannot disagree on this.

Accordingly, the defendants are immune from suit and any judgment of money damages.  The Court should grant their motion for summary judgment.

F. <u>CONCLUSION</u>

For the above reasons, the defendants respectfully submit the undisputed

material facts demonstrate they are entitled to judgment as a matter of law on all claims.

DEFENDANTS,
Gray, Parnisakul, Burritt, Ross, Byars,
Hurdle, Marek, Bertulis and Yerkes

GEORGE JEPSEN
ATTORNEY GENERAL

By: _____*/s/DeAnn S. Varunes*_____
DeAnn Varunes, Juris # ct25903
Assistant Attorney General
110 Sherman Street
Hartford, CT  06105
Tel.: (860) 808-5450
Fax: (860) 808-5591
E-mail: deann.varunes@ct.gov

## CERTIFICATION

I hereby certify that on September 8, 2017, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Courts electronic filing system. Parties may access this filing through the Court's system. A copy was also sent to the following by first-class mail, postage prepaid, to:

Mr. Jose Garcia
Inmate Number #266497
Garner Correctional Institution
50 Nunnawauk Road
PO Box 5500
Newtown, CT 06470

/s/*DeAnn S. Varunes*
DeAnn S. Varunes
Assistant Attorney General