**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JOSE GARCIA, | : | |
| Plaintiff | : | |
| | : | CASE NO. 3:16cv852(JCH) |
| v. | : | |
| | : | |
| UNIVERSITY OF CONNECTICUT | : | |
| HEALTH CARE CENTER, ET AL., | : | NOVEMBER 7, 2018 |
| Defendant. | : | |

**AMENDED[*] RULING RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**(DOC. NO. 38) AND SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**
**(DOC. NO. 81)**

The plaintiff, Jose Garcia ("Garcia"), is currently incarcerated at MacDougall-

Walker Correctional Institution, in Suffield, Connecticut. He initiated this action by filing

a pro se complaint pursuant to section 1983 of title 42 of the United States Code and

Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq.,

against the University of Connecticut Health Care Center ("UCONN"), the Department of

Corrections ("DOC"), Commissioner Scott Semple, Lieutenant Hurdle, Correctional

Officers Genise, Gray, Parnisakul, Burritt, Ross, and Byars, Clinical Social Workers

Marek and Bertulis, and Licensed Practical Nurse Yerkes. See Complaint ("Compl.")

(Doc. No. 1) at 1–3. The Complaint includes allegations pertaining to Garcia's

placement on in-cell restraints on May 6, 2014, and his confinement on in-cell restraints

until May 7, 2014. See id. at 6–9.

Before the court are the Motion for Summary Judgment (Doc. No. 38) and

Supplemental Motion for Summary Judgment (Doc. No. 81) filed by defendants Hurdle,

---

[*] The Ruling has been amended in response to the Joint Motion for Clarification filed by the parties, to correct the omission of Yerkes' name in the conclusion. See Joint Mot. for Clarification and/or Modification to Ruling (Doc. No. 90).

Gray, Parnisakul, Burritt, Ross, Byars, Marek, Bertulis, and Yerkes. For the reasons set forth below, the Motions are **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

In its Initial Review Order on September 29, 2016, the court dismissed the ADA claims, the section 1983 claim of verbal harassment against Genise, the section 1983 claims against Semple, UCONN, and DOC pursuant to section 1915A(b)(1) of title 28 of the United States Code, and the claims for monetary damages against all defendants in their official capacities pursuant to section 1915A(b)(2) of title 28 of the United States Code. See Initial Review Order (Doc. No. 7). Thus, all claims against Genise, Semple, UCONN, and DOC have been dismissed.

Following the Initial Review Order, three of Garcia's claims were allowed to proceed: (1) an Eighth Amendment claim that defendants Gray, Marek, Bertulis, and Yerkes were deliberately indifferent to Garcia's mental health needs when they refused to prescribe him medication or treatment for his mental illness and instead punished him by placing him in restraints; (2) an Eighth Amendment claim that defendants Hurdle, Parnisakul, Burritt, Ross, and Byars were deliberately indifferent to Garcia's safety and health and subjected him to unconstitutional conditions of confinement when they facilitated his placement on in-cell restraints or applied the restraints in such a manner as to cause him pain and prevent him from standing upright or using the toilet; and (3) a First Amendment claim that defendants Hurdle, Parnisakul, Burritt, Ross, and Byars placed him on in-cell restraints for nine hours in retaliation for his statement that he planned to file a lawsuit against the mental health staff at GCI. Id. at 2–3, 9.

The defendants filed a Motion for Summary Judgment ("Defs. Mot. Summ. J.") (Doc. No. 38) on September 8, 2017. Garcia filed a Memorandum in Opposition ("Pl.

First Mem. in Opp'n") (Doc. No 59) on January 9, 2018.  In its Order for Further Briefing on June 11, 2018 (Doc. No. 69), the court concluded that, because Garcia was a pretrial detainee when the events at issue occurred, his claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment. Doc. No. 69 at 8.  The court therefore construed Garcia as asserting his deliberate indifference to medical needs and deliberate indifference to health and safety claims under the Fourteenth Amendment.  The parties were asked to submit further briefing of the case under the Fourteenth Amendment standard.  <u>Id.</u>  On August 2, 2017, in response to the court's Order for Further Briefing, the defendants filed a Supplemental Motion for Summary Judgment ("Suppl. Mot. Summ. J.") (Doc. No. 81) and Supplemental Memorandum of Law in Support ("Defs. Suppl. Mem. in Supp.") (Doc. No. 81, Attach. 1).  Garcia filed a Second Memorandum in Opposition ("Pl. Second Mem. in Opp'n") on September 7, 2018.  <u>See generally</u> Pl. Second Mem. in Opp'n (Doc. No. 83). The defendants seek summary judgment on all remaining claims.

## II.    STANDARD OF REVIEW

On a motion for summary judgment, the moving party bears the burden of establishing the absence of any genuine issue of material fact.  <u>Zalaski v. City of Bridgeport Police Dep't</u>, 613 F.3d 336, 340 (2d Cir. 2010).  If the moving party satisfies that burden, the nonmoving party must set forth specific facts demonstrating that there is 'a genuine issue for trial.  <u>Wright v. Goord</u>, 554 F.3d 255, 266 (2d Cir. 2009).  A genuine issue exists where the evidence is such that a reasonable jury could decide in the non-moving party's favor.  <u>See, e.g.</u>, <u>Rojas v. Roman Catholic Diocese of Rochester</u>, 660 F.3d 98, 104 (2d Cir. 2011) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252, (1986)).

The court's role at summary judgment "is to determine whether genuine issues of material fact exist for trial, not to make findings of fact." O'Hara v. Nat. Union Fire Ins. Co. of Pittsburgh, 642 F.3d 110, 116 (2d Cir. 2011). Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment. See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). Additionally, the evidence the court considers in ruling on a motion for summary judgment must be admissible evidence, or evidence that could be readily reduced to an admissible form at trial. See LaSalle Bank National Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 205 (2d Cir. 2005); Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001) ("Affidavits submitted to defeat summary judgment must be admissible themselves or must contain evidence that will be presented in an admissible form at trial.") (citation omitted).

III.    **FACTS**[1]

Garcia was an inmate at Garner Correctional Institution ("GCI") from April 8, 2013 through January 2, 2018. Defs. Suppl. L.R. 56(a) (Doc. No. 81-2) ¶ 4. On May 6 and May 7, 2014, Garcia was a pretrial detainee. Id. ¶ 1. On May 6, 2014, GCI staff attempted a "verbal intervention" with Garcia for the purpose of moving him from his cell in H Unit to a cell in F Unit, a Restrictive Housing Unit ("RHU") at GCI. Id. ¶¶ 6–7, 12; Pl. Suppl. L.R. 56(a) (Doc. No. 83-15) at 2 ¶ 7. GCI staff videotaped a portion of the

---

[1] The relevant facts are undisputed unless otherwise indicated and are taken from the defendants' Local Rule 56(a)(1) Statement, the defendants' Supplemental Local Rule 56(a)(1) Statement, Garcia's Local Rule 56(a)(2) Statement, and Garcia's Supplemental Local Rule 56(a)(2) Statement, as well as supporting exhibits to those documents.

verbal intervention and Garcia's subsequent transfer to F Unit.  See DVD-GCI-V-14-274 (Doc. No. 38-14).[2]

At the time of the verbal intervention, Garcia was agitated about receiving a Disciplinary Report and about transfer to RHU following earlier harassment by a corrections officer.  See Pl. Suppl. L.R. 56(a) at 10–11 ¶¶ 9–11.  Garcia repeatedly refused to submit to handcuffs, and he became agitated over the course of the interaction with GCI staff.  Id. at 11 ¶ 14.  At one point, Garcia attempted to sharpen a toothbrush in his cell.  Defs. Suppl. L.R. 56(a) ¶ 8; Pl. Suppl. L.R. 56(a) at 2 ¶ 8.  An officer deployed a chemical agent into Garcia's cell to gain his compliance.  See Defs. Suppl. L.R. 56(a) ¶ 9; Pl. Suppl. L.R. 56(a) at 2 ¶ 9.  Garcia complied shortly thereafter and officers escorted Garcia to the RHU in F Unit.  DVD-GCI-V-14-274 at 28:50, 38:00.[3]

Ross responded to a request for assistance at F Unit at approximately 6:45 pm on May 6, 2014.  See Defs. Suppl. L.R. 56(a) ¶ 31; Pl. Suppl. L.R. 56(a) at 3 ¶ 31.  Ross observed that Garcia had covered his cell window with toilet paper.  Defs. Suppl. L.R. 56(a) ¶ 32; Pl. Suppl. L.R. 56(a) at 3 ¶ 32.  Lieutenant Mitchell arrived at Garcia's cell in F Unit at approximately 6:45 pm, and officers began verbal intervention with Garcia in an attempt to get him to uncover his window and come to the trap door to be handcuffed.  See Pl. First Mem. in Opp'n., Ex. 2 (Incident Reports) (Doc. No. 59-2) at 3.  Ross was directed to place a plastic shield over the opening to the trap in Garcia's cell door to permit staff to view Garcia inside the cell.  See Defs. Suppl. L.R. 56(a) ¶ 34; Pl.

---

[2]  The video begins with a recitation of the time as approximately 11:34 am, and is 38 minutes and 44 seconds in length.  The video's audio quality varies, and it is not always possible to understand what staff or Garcia are saying.

[3] Three video recordings were manually filed with the court: DVD-GCI-V-274, 276, and 279 (Doc. No. 38-14).  Garcia relied on the first two of these videos in his briefing.  The facts taken from the recordings are undisputed unless otherwise noted.

Suppl. L.R. 56(a) at 4 ¶ 34. During the next forty minutes, Marek, Bertulis, and Yerkes attempted to converse with Garcia through the trap in his cell door and to convince him to cuff up so that officers could remove from his cell. See DVD-GCI-V-14-276 (Doc. No. 38-14).

Marek recorded a clinical note indicating that she interacted with Garcia at his cell in F Unit on the evening of May 6, 2014. See Defs. Suppl. L.R. 56(a) ¶¶ 65–66; Pl. Suppl. L.R. 56(a) at 5 ¶¶ 65–66. Marek's notes indicate that Garcia was angry because he had received another disciplinary ticket and that Garcia threatened to cover his window again and hurt prison staff if they attempted to enter his cell. See Defs. Suppl. L.R. 56(a) ¶¶ 65–66; Pl. Suppl. L.R. 56(a) at 5 ¶ 66. Marek observed that Garcia was not in distress, that he reported no suicidal ideation or hallucinations, and that Garcia planned to speak to his primary social worker after he attended his court proceeding the following day. See Defs. Suppl. L.R. 56(a) ¶¶ 65–66; Pl. Suppl. L.R. 56(a) at 5 ¶ 66. Marek concluded that Garcia's mental health was not a mitigating factor in the issuance of a disciplinary report and that he could "continue with the RHU placement process." See Defs. Suppl. L.R. 56(a) ¶¶ 65–66; Pl. Suppl. L.R. 56(a) at 5 ¶ 66.

After speaking to Bertulis for a second time, Garcia submitted to handcuffs and was escorted to the restrictive housing unit. See Defs. Suppl. L.R. 56(a) ¶ 76; Pl. Suppl. L.R. 56(a) at 6 ¶ 76. Burritt and Byars escorted Garcia to a cubicle in F Unit. See Defs. Suppl. L.R. 56(a) ¶¶ 18, 54; Pl. Suppl. L.R. 56(a) at 3 ¶ 18, 4 ¶ 54. At one point during Garcia's confinement in the cubicle, Bertulis spoke to Garcia and said that "we will help you." See Pl. Suppl. L.R. 56(a) at 14 ¶ 29; DVD-GCI-V-14-276 at 39:35.

Officers then escorted Garcia from the cubicle to Cell 125 in F Unit.  <u>See</u> Pl. Suppl. L.R. 56(a) at 14 ¶ 30.  Garcia was then placed on in-cell restraints; LPN Yerkes checked the restraints but did not ask Garcia to stand.  <u>Id</u>.

Garcia remained on in-cell restraints until 5:00 am on May 7, 2014.  <u>See</u> Pl. Suppl. L.R. 56(a) at 15 ¶ 33.  Officers Byars and Gray recorded their observations of Garcia on a restraint checklist.  <u>See</u> Defs. Suppl. L.R. 56(a) ¶¶ 20, 27; Pl. Suppl. L.R. 56(a) at 3 ¶¶ 20, 27.  Garcia generally remained calm and did not ask Gray to get him anything.  <u>See</u> Defs. Suppl. L.R. 56(a) ¶¶ 27–28; Pl. Suppl. L.R. 56(a) at 3 ¶ 27.  Around 5:00 am on May 7, 2014, Garcia was removed from Cell 125 for purposes of transporting him to court.  <u>See</u> Pl. Suppl. L.R. 56(a) at 15 ¶ 33.  While in the custody of court marshals, Garcia attempted to commit suicide by hanging.  <u>Id.</u> at 15 ¶ 37.

## IV.    DISCUSSION

### A.    <u>Exhaustion of Administrative Remedies</u>

The defendants argue that Garcia failed to exhaust the administrative remedies available to him, as required by the Prison Litigation Reform Act ("PLRA").  Garcia argues that he fully exhausted his remedies as to all claims.  The PLRA, section 1997e(a) of title 42 of the United States Code, requires that a prisoner exhaust all available administrative remedies before filing a lawsuit concerning prison conditions.  42 U.S.C. § 1997e(a).  The PLRA applies to pre-trial detainees.  <u>See</u> 42 U.S.C. § 1997e(h).  Proper exhaustion includes complying with all procedural rules and filing deadlines as defined by the prison grievance system.  <u>See</u> <u>Woodford v. Ngo</u>, 548 U.S. 81, 90–91 (2006).  Thus, "untimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirements." <u>Ruggiero v. County of Orange</u>, 467 F.3d 170, 176 (2d Cir. 2006).

The Supreme Court has addressed three scenarios in which a prisoner's inability to use the administrative procedures officially adopted by a prison facility rendered the procedures "unavailable" for the purpose of determining PLRA exhaustion. These are (1) where the procedure is a "dead end" because officers are unable or consistently unwilling to provide any relief to aggrieved inmates; (2) where the requirements are so opaque or convoluted that an ordinary prisoner could not navigate them; and (3) when prison staff use threats, intimidation, or misrepresentation to stop an inmate from using the grievance process. See Ross v. Blake, 136 S. Ct. 1850, 1859–60 (2016).

Failure to exhaust administrative remedies pursuant to the PLRA is an affirmative defense. See Jones v. Bock, 549 U.S. 199, 216 (2007). The defendants have the burden to show there are no material issues of fact as to Garcia exhausting his claims prior to filing this action. See Johnston v. Maha, 460 Fed. App'x 11, 15 (2d Cir. 2012) ("The defendants have the burden of showing that there is no genuine issue of material fact as to exhaustion that would preclude summary judgment."). The court summarizes the framework for the DOC administrative remedies before addressing whether Garcia exhausted the remedies as to each of his claims.

1.    DOC Administrative Remedies

The DOC's Inmate Administrative Remedies are set forth in Administrative Directive 9.6. See Defs. Suppl. Mot. Summ. J., Ex. 9, Attach. A ("AD 9.6") (Doc. No. 81-14). AD 9.6 became effective August 15, 2013, and was in effect during the time relevant to Garcia's claims. The type of remedy available to an inmate depends on the nature of the condition or decision at issue. The Inmate Grievance Procedure, section six of AD 9.6, is the designated administrative remedy for all matters not specifically identified in section 4, subsections A–I. See AD 9.6 § 4(A). Thus, claims regarding

conditions of confinement, such as placement on in-cell restraints or the refusal to provide hygiene items are subject to the Inmate Grievance Procedure.  If an inmate is seeking a remedy related to medical or mental health claims, he must comply with the requirements set forth in Administrative Directive 8.9, entitled Administrative Remedy for Health Services.  See id. § 4(L).

The Inmate Grievance Procedures require that an inmate first attempt to resolve the matter informally.  Id. § (6)(A).  If verbal resolution is unsuccessful, the inmate must use a specific form to submit a written request.  Id. § 6(A).  A response to the written request must be made by DOC within fifteen business days.  Id.  If attempts to resolve the matter informally are unsuccessful or if the inmate did not receive a timely response, he may file a Level 1 Grievance.  See id. § (6)(C).

A Level 1 grievance must be filed within thirty days of the date of the occurrence or discovery of the cause of the Grievance.  See id.  The Unit Administrator must respond in writing within thirty business days of receiving the grievance.  See id. § (6)(I).

The inmate may appeal an unfavorable or untimely disposition of the Level 1 grievance to Level 2.  See id. § (6)(G), (I).  An inmate appealing an unfavorable disposition must file the Level 2 appeal within five days of the inmate's receipt of the Level 1 decision.  See id. § (6)(K).  An inmate appealing an untimely decision must file the Level 2 appeal no later than 65 days after the inmate filed the Level 1 grievance.  See id. § (6)(M).  Level 2 appeals by inmates housed in a Connecticut correctional facility are reviewed by the appropriate District Administrator.  See id. § (6)(K).  The District Administrator is required to respond to the Level 2 appeal within 30 business days of receipt of the appeal.  Id.

Level 3 appeals are restricted to challenges to department policy, the integrity of the grievance procedure, or untimely responses to Level 2 appeals.  Id. § (6)(L).  A Level 3 appeal of an unfavorable decision must be filed within five calendar days of the inmate's receipt of the decision.  Id.  A Level 3 appeal of an untimely disposition must be filed within 35 days of the filing of the Level 2 appeal.  Id. § (6)(M).  A Level 3 appeal is reviewed by the Commissioner of Correction or his or her designee.  Id. § (6)(L).  A response to a Level 3 appeal is due within thirty business days of the receipt of the appeal by the Commissioner or his or her designee.  Id.

Administrative Directive 8.9, effective July 24, 2012, governs matters relating to the provision of health services to inmates.  See Defs. Mot. Summ. J., Ex. 10 ("AD 8.9") (Doc. No. 38-12).  There are two types of Health Services Review: (1) Diagnosis and Treatment, and (2) Review of an Administrative Issue.  See id. § 9(A), (B).  An inmate seeking review of a diagnosis or treatment issue must attempt to seek informal resolution prior to filing a formal request for a Health Services Review.  See id. § 10.  If an inmate is unsatisfied with the informal resolution of the complaint and seeks further review, he must file an Inmate Administrative Remedy Form seeking a Health Services Review of the diagnosis or treatment of his or her medical condition.  See id. § 11.  A response to a written request must be made within fifteen days of receipt of the request. See id.

If an informal resolution is unsuccessful, the Health Services Review Coordinator is required to schedule a Health Services Review Appointment with a medical provider as soon as possible.  See id. § 11(A).  If the medical provider concludes that the existing diagnosis or treatment was appropriate, the inmate is considered to have

exhausted his health services review remedy.  Id.  If the medical provider reaches a different conclusion with regard to the appropriate diagnosis or course of treatment for the inmate's condition, he or she may either provide the appropriate treatment or refer the case to the Utilization Review Committee for authorization of different treatment. See id. § 11(B).

    2. First Amendment/Retaliation Claims

  Garcia alleges that defendants Parnisakul, Burritt, Ross, and Byars placed him on in-cell restraints and that defendant Hurdle refused to give him soap and a cloth to clean himself after his removal from in-cell restraints in retaliation for informing Yerkes, Bertulis, and Marek that he was going to file a lawsuit against them for withholding his mental health medication from him.  See Compl. at 7–8.  Parnisakul, Burritt, Ross, Hurdle, and Byars argue that Garcia did not exhaust these claims of retaliatory conduct.

  Both the defendants and Garcia have filed copies of a Level 1 Grievance and Level 2 Grievance Appeal related to the incidents that occurred on May 6, 2014 and May 7, 2014.  See Defs. Suppl. Mot. Summ. J., Ex. 9, Attach. B (Doc. No. 81-14) at 21–23; Pl. First Mem. in Opp'n, Ex. 3 (Doc. No. 38-11).  Garcia stated in the Grievance that, after being harassed by a corrections officer, an altercation with staff led to disciplinary sanctions and removal to the RHU.  See Pl. First Mem. in Opp'n, Ex. 3 at 21.  Garcia claimed he became distraught and irrational, leading to further sanctions.  Id.  Garcia claimed that staff placed him on in-cell restraints and left him in restraints overnight.  Id. Garcia alleged that the process humiliated and dehumanized him, and that it was "clear retaliatory behavior" in response to his conduct.  Id.

  Garcia's Level 1 Grievance does not specify the actions for which he was retaliated against by GCI staff.  Defendants argue that the Level 1 Grievance's "sole

focus was with respect to custody's general use of a '3 point restraint'" and that the claims were unrelated to Garcia's allegations in the Complaint that his being restrained was in retaliation for stating he would pursue a lawsuit against mental health staff. Defendants' Memorandum in Support of Summary Judgment ("Defs. Mem. in Supp.") (Doc. No. 38-1) at 8. Garcia's position is that he adequately complained of the "decision to use '3 point' restraints on May 6, 2014 and the physical and psychological impact of that decision," and that "[l]ike the Grievance, the allegations of Plaintiff's complaint center on the events commencing on May 6, 2014 and the use of the in-cell restraints." Pl. Second Mem. in Opp'n at 12.

One purpose of the PLRA is to afford inmates and corrections officials an opportunity to address complaints internally before engaging in federal litigation. See Woodford, 548 U.S. at 93–94. "In order to exhaust . . . inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." Johnson v. Testman, 380 F.3d 691, 697 (2d Cir. 2004). As such, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." Id. The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. Jones v. Bock, 549 U.S. at 218.

The Grievance Form indicates that Garcia was to "[p]rovide any factual information that is applicable [to the Grievance], including any responses from staff." See Pl. Second Mem. in Opp'n, Ex. 11. Garcia's Grievance referenced his placement on in-cell restraints and that GCI staff left Garcia restrained overnight. It did not mention

that he told Yerkes, Bertulis, and Marek that he would sue them for allegedly refusing to provide him with medication or that the decision by Parnisakul, Burritt, Ross, and Byars to place him on in-cell restraints was made in retaliation for his claim to file a future lawsuit against Yerkes, Bertulis, and Marek. The word "lawsuit" does not appear on the face of the Grievance, and the only reference to retaliation is a one-sentence claim that Garcia was placed in restraints in retaliation for his conduct. See Pl. Second Mem. in Opp'n, Ex. 11 at 3. Garcia does not state in the Grievance he filed that he was caused to urinate or defecate on himself, nor that he was unable to stand up or use the toilet, nor that he was prevented from cleaning himself before appearing in court.

The question before this court is not whether Garcia exhausted his available administrative remedies, but whether there is a material dispute of fact as to whether he did so. Viewing the evidence in the light most favorable to Garcia, however, the court concludes that there is no material issue of fact. Garcia's Grievance made no mention of his threatening to sue GCI, no mention of staff actions in response to such statements, and contained no details regarding an inability to use the toilet or any allegation that he urinated or defecated on himself as a result. Finally, Garcia made no mention of staff refusing him the opportunity or ability to clean himself before appearing in court.

The court concludes that, based on the undisputed facts, a reasonable jury could not find that the Level 1 Grievance filed on May 15, 2014, constituted an attempt to exhaust Garcia's retaliation claim against Parnisakul, Burritt, Ross, Byars, and Hurdle.[4]

_____

[4] Garcia argues in his Second Memorandum in Opposition that "[t]he undisputed facts demonstrate the exhaustion requirement has been met." See Pl. Second Mem. in Opp'n at 12. Garcia

Parnisakul, Burritt, Ross, Byars, and Hurdle have met their burden of demonstrating that there are no issues of material fact in dispute with regard to the exhaustion of the retaliation claims against them and that they are entitled to judgment as a matter of law. The defendants' Motion for Summary Judgment is granted as to Garcia's retaliation claims for failure to exhaust.

### 3. Deliberate Indifference to Mental Health Needs Claim

Defendants further argue that Garcia failed to exhaust the available administrative remedies as related to his claim that Gray, Marek, Bertulis, and Yerkes were deliberately indifferent to his mental health needs because they failed to give Garcia medication and instead placed him in restraints. Defendants support this argument by pointing to the fact that "[Garcia's] medical file, which contains a section for filing grievances, does not contain any grievances regarding the alleged misconduct of the mental health staff on May 6, 2014." Defs. Suppl. Mem. in Supp. at 9. Garcia argues in response that defendants have failed to meet their burden of proof. See Pl. Second Mem. in Opp'n at 14.

As noted above, inmates seeking to file a grievance related to medical care or treatment, including mental health treatment, are required to follow the procedures outlined by Administrative Directive 8.9. See AD 9.6 § 4(L). Defendants' Local Rule 56(a) Statement of Facts states that copies of these grievances—called Health Services Reviews—are kept in the inmate's medical record. See Defs. L.R. 56(a) ¶ 76.

---

bases this argument on the fact that the Grievance Appeal Form contains an X marking the statement "You have exhausted the Department's Administrative Remedies. Appeal to Level 3 will not be answered." See id. However, the mark is not an indication that Garcia exhausted his administrative remedies as to all claims he might have raised. It shows only that Garcia was deemed to have exhausted his available remedies as to the claims for which the Grievance provided notice.

However, as Garcia correctly noted in opposition, defendants do not cite to authority or evidence for this claim.  <u>See</u> Pl. Suppl. L.R. 56(a) at 8 ¶ 76.  The defendants filed a copy of Administrative Directive 8.9 as an exhibit to their Motion for Summary Judgment.  <u>See</u> Doc 38-12 ("AD 8.9").  AD 8.9 section 13(C) states that "[t]he health record of each inmate who has applied for a Review of a Diagnosis or Treatment shall contain a copy of the forms used in the Review, notations in the clinical record including a notation of 'HSR Administrative Remedy' appointment."  AD 8.9 § 13(C).  While the defendants did not cite to this authority, it supports their claim that Health Services Reviews are filed as part of inmate medical records.

Defendants also filed the Declaration of Magdalena Szczygiel, the Grievance Coordinator at GCI, <u>see</u> Defs. Suppl. Mot. Summ. J., Ex. 9 (Doc. 81-14) at 2, who asserts that she was not able to find any grievances filed by Garcia relating to medical care or diagnoses.  <u>See</u> <u>id.</u> at 2–3.  Szczygiel affirms that she has been the Grievance Coordinator at GCI since 2015, and that her position is "one of the Administrative Remedies Coordinator positions appointed by the Unit Administrator, as set forth in Administrative Directive 9.6."  <u>Id.</u> at 2.  Szczygiel further affirmed that she is the keeper of grievances filed by inmates at GCI.  <u>Id.</u> at 3.

Garcia argues that Szczygiel does not attest to her authority over or knowledge of health services review requests filed pursuant to AD 8.9.  <u>See</u> Pl. Second Mem. in Opp'n at 14.  Szczygiel does not declare that she reviews or is the keeper of records for health services reviews, nor did she declare that she reviewed Garcia's medical file to determine whether he had filed medical or mental health grievances or health services requests pursuant to AD 8.9.

The defendants have not filed an affidavit or declaration of the individual at GCI who is responsible for processing medical/mental health grievances or health services requests pursuant to Administrative Directive 8.9, namely the Health Services Review Coordinator. While defendants filed a copy of at least some of Garcia's medical records under seal, they offer no evidence that the filed documents constitute Garcia's full and complete medical records. Thus, they have not shown that there is no material issue of fact as to the existence of mental health grievances or health services requests pertaining to the alleged failure of Gray, Yerkes, Bertulis, and Marek to provide Garcia with medication to treat his mental health conditions on May 6, 2014.

The court concludes that Gray, Yerkes, Bertulis, and Marek have not met their burden of demonstrating that there are no issues of material fact in dispute with regard to the exhaustion of the mental health treatment claim. The Motion for Summary Judgment, on the ground that Garcia did not exhaust his available administrative remedies as to this claim, is therefore denied.

4.    Deliberate Indifference to Health and Safety/Unconstitutional Conditions of Confinement Claim

Finally, defendants contend that Garcia failed to exhaust the available administrative remedies as to his claims (1) that defendants Ross, Burritt, Parnisakul, and Byars acted with deliberate indifference to Garcia's health and safety and subjected him to unconstitutional conditions of confinement when they placed him on in-cell restraints; and (2) that defendant Hurdle acted with deliberate indifference to Garcia's health and safety and subjected him to unconstitutional conditions of confinement when he refused to allow Garcia to clean himself before court. The court addresses the exhaustion of these claims separately.

The Level 1 Grievance filed by Garcia on May 15, 2014, includes a claim regarding his placement on in-cell restraints from May 6, 2014 to May 7, 2014, using handcuffs, leg shackles, and a tether chain connecting the handcuffs to the leg shackles. See Pl. First Mem. in Opp'n, Ex. 3 at 21. Garcia describes these restraints as three-point restraints in his Grievance. Id. Garcia argues that he was humiliated, and that the restraint process dehumanized him. Id. Garcia appealed the denial of this Grievance; the Level 2 reviewer checked the box indicating that Garcia had exhausted his administrative remedies as to the claim in the Level 1 Grievance. Id. at 23.

The Level 1 Grievance filed by Garcia on May 15, 2014, does not include an allegation about Garcia urinating and defecating on himself because he was unable to use the bathroom during his confinement on in-cell restraints. The Grievance clearly states that Garcia was put on in-cell restraints on May 6, 2014, was left in restraints overnight, and that this experience was humiliating and dehumanizing. Id. at 3. Garcia also stated in the Grievance that the conduct was unconstitutional, claiming that it amounted to "cruel and unusual punishment." Id.

The court concludes that Garcia's Grievance raises a genuine issue of material fact as to whether he exhausted his available administrative remedies as to his claim that defendants Ross, Burritt, Parnisakul, and Byars acted with deliberate indifference to his health and safety. The Motion for Summary Judgment is therefore denied on the ground that Garcia did not exhaust his available remedies prior to filing this action with regard to the Fourteenth Amendment claim that Byars, Burritt, Ross, and Parnisakul had applied the restraints in way that prevented him from standing upright or using the toilet.

However, the court reaches a different conclusion as to whether Garcia exhausted his administrative remedies as to his claim of deliberate indifference to health and safety against Hurdle. Garcia alleges that Hurdle was deliberately indifferent to his health and safety because he denied Garcia the opportunity to clean himself and remove dried urine and feces from his body before attending court. See Affidavit of Jose Garcia. (Doc. No. 83-2) ¶ 22. Garcia made no mention in his Level 1 Grievance of defecating or urinating on himself while on in-cell restraints. Nor did he make any mention of any GCI staff member refusing him the opportunity to clean himself before attending court. Absent even the barest allegation in his Grievance regarding his treatment by staff following removal of the in-cell restraints, the court concludes that there is no issue of material fact as to whether Garcia properly exhausted his available administrative remedies as to this claim. Defendants' Motion for Summary Judgment is therefore granted for failure to exhaust as to the claim that Hurdle acted with deliberate indifference to Garcia's health and safety, and subjected him to unconstitutional conditions of confinement.

The court has concluded that there is no material issue of fact as to the exhaustion of Garcia's claims of First Amendment retaliation against Hurdle, Parnisakul, Burritt, Ross, and Byars. The court has concluded that there are material issues of fact as to exhaustion of Garcia's claims of Fourteenth Amendment deliberate indifference to mental health needs against Gray, Yerkes, Bertulis, and Marek, and of Fourteenth Amendment deliberate indifference as to Garcia's health and safety and subjection to unconstitutional conditions of confinement by Byars, Burritt, Ross, and Parnisakul. The

court now addresses whether a material issue of fact exists as to the elements of each of the remaining claims.

      B.    <u>Fourteenth Amendment Claims of Deliberate Indifference</u>

Garcia alleges that GCI staff acted with deliberate indifference to his mental health needs by "refusing to prescribe Mr. Garcia medication or treatment for his mental illness and instead placing him in restraints as punishment." <u>See</u> Pl. Second Mem. in Opp'n at 1. Because Garcia was a pretrial detainee during the relevant time period, his claims are governed by the Due Process Clause of the Fourteenth Amendment. <u>Darnell v. Pineiro</u>, 849 F.3d 17, 29 (2d Cir. 2017).

To establish a claim for deliberate indifference to conditions of confinement under the Due Process Clause of the Fourteenth Amendment, a pretrial detainee must satisfy a two-pronged test: (1) an "objective prong" showing that the challenged conditions were sufficiently serious to constitute a constitutional deprivation, and (2) a "subjective prong," also called a "<u>mens rea</u> prong," showing that the defendant acted with deliberate indifference. <u>Id.</u> at 29. The test is the same regardless of what condition of confinement is challenged. <u>See id.</u> at 33 n.9 ("[<u>D</u>]eliberate indifference means the same thing for each type of claim under the Fourteenth Amendment.")

To satisfy the objective prong, a detainee must prove that the challenged conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health, including mental health. <u>See id.</u> at 29. To satisfy the <u>mens rea</u> prong, the detainee must prove that the defendants acted with deliberate indifference, which in the context of a Fourteenth Amendment claim equates to objectively reckless behavior. <u>See id.</u> at 29, 35 (holding that "the subjective prong (or <u>mens rea</u> prong) of a deliberate indifference claim is defined objectively") (internal quotations omitted).

At summary judgment, the burden is on the defendants to show there is no material issue of disputed fact as to whether the plaintiff was objectively deprived of due process, or that the defendants did not act with deliberate indifference.  The court first addresses Garcia's claims of deliberate indifference as to mental health needs before proceeding to his claims of deliberate indifference as to health and safety.

### 1.    Deliberate Indifference to Mental Health Needs

Garcia alleges that Gray, Marek, Bertulis, and Yerkes acted with deliberate indifference to Garcia's mental health needs when they refused to address his requests for treatment in connection with his placement in restrictive housing.  Pl. Second Mem. in Opp'n at 16.  Defendants contend that there are no material issues of fact to support Garcia's claim that the defendants acted with deliberate indifference to his health needs.  Defs. Suppl. Mem. in Supp. at 14.

### a.    Objective Requirement

The objective requirement of a deliberate indifference of medical needs claim consists of two inquiries.  "The first inquiry is whether the prisoner was actually deprived of adequate medical care."  Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006). The second is "whether the inadequacy in medical care is sufficiently serious."  Id. at 280.  When an inmate's claim of deliberate indifference is based on a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious.  Id. (citing Smith v. Carpenter, 316 F.3d 178, 185-86 (2d Cir. 2003)).  Factors relevant to the seriousness of a medical condition include whether "a reasonable doctor or patient would find [it] important and worthy of

comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." Id.

Here, the defendants conceded for the purpose of summary judgment that Garcia has been diagnosed with serious mental health disorders, and Garcia's medical record demonstrates that he suffered from chronic, severe mental health issues. See Pl. Second Mem. in Opp'n at 16. However, defendants contest that Garcia was deprived of medical care.

Defendants argue that there is no evidence that Garcia requested medicine.[5] They assert that the video recordings submitted to the court support this argument. See Def. Suppl. Mem. in Supp. at 13. They also argue that the medical defendants' clinical entries make no mention of Garcia making any requests for medication. Id.

Garcia claims that he made repeated requests for medication, and that these requests were ignored. Pl. Second Mem. in Opp'n at 17. In support of this claim, Garcia relies on (1) his Affidavit, and (2) a portion of a video recording submitted to this court. See id. Garcia also argues that, because the video recordings submitted to the court cover only a small portion of the total time relevant to Garcia's claims, they "do not provide a complete picture of the events, Mr. Garcia's requests for medication, and/or the medications that Mr. Garcia should have received, but did not." Id. Garcia argues that the defendants' failure to provide him with medication led to his "desperate attempt

_____

[5] Defendant Gray also argues that he had limited interaction with Garcia, and that his "only involvement with Garcia was to keep the trap door open so that superior staff could maintain contact with him." See Defs. Suppl. Mem. in Supp. at 12–13. As the Supreme Court has held, guards "intentionally denying or delaying access to medical care can constitute deliberate indifference to medical needs. See Estelle v. Gamble, 429 U.S. 97, 104–05 (1976). Garcia swears that he repeatedly requested medication. A reasonable inference is that a person standing at a cell door would hear such requests. Garcia's Affidavit, combined with Gray's admission that he was present at the cell door, raises a material issue of fact as to whether Gray was deliberately indifferent to Garcia's requests for medication.

to commit suicide by hanging," and that the attempted suicide shows that the defendants' actions posed a serious risk to Garcia's health.  See id.

The defendants argue that "there is no apparent evidence that Garcia asked defendants Marek, Bertulis, and Yerkes for medicine."  Id.  However, "a party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record."  Celotex Corp. v. Catrett, 477 U.S. 317, 332 (1986).  A nonmoving party may defeat a motion for summary judgment that rests on a lack of evidence by calling the court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party.  Id.  Once the nonmoving party has made such evidence clear to the court, "the moving party must . . . attempt to demonstrate the inadequacy of this evidence."  Id.

The word "medicine" is referenced at least once in the video recordings submitted to the court.  DVD GCI-V-14-276 at 37:20.  The reference is during a conversation between Garcia and Social Worker Bertulis.  Id. at 37:20.  Much of the conversation is difficult to understand because of background noise, but at one point in the video, Bertulis can be seen to listen to Garcia, and then ask Garcia, "What do you want?"  Id. at 37:20.  Following further conversation and a pause, Bertulis asks the fragmented question, "Like Medicine?"  Id. at 37:20.  Thereafter, Bertulis can be heard to say that she can help Garcia with some aspects of a request but not others. Id. at 38:00.

Defendants did not address the contents of the video recordings, or explain why the mention of "medicine" was not sufficient to raise a question of fact as to Garcia's claim that he requested medication and was ignored.  Garcia swore in his Affidavit that

he made repeated requests for medicine, and the requests were ignored.  <u>See</u> Affidavit of Jose Garcia (Doc. No. 83-2) ¶ 16.  Garcia also notes that the video is only a recording of part of the interaction between him and GCI staff.  <u>See</u> Pl. Second Mem. in Opp'n at 17 ("The videos only record a limited period of time (under 92 minutes total) relative to the hours during which the incidents occurred (more than 18 hours).  Thus, the recordings do not provide a complete picture of the events, Mr. Garcia's requests for medication, and/or the medications that Mr. Garcia should have received, but did not.").  The court concludes, based on the ambiguous video evidence, combined with the contested nature of the evidence presented by the defendants and Garcia, that there is a material issue of fact as to whether Garcia made requests for medication that were ignored.

b.      Subjective Requirement

Defendants also argue that there is no material issue of disputed fact as to whether they acted with deliberate indifference to Garcia's mental health needs.  The defendants again rest their Motion on the argument that Garcia has provided no evidence that the defendants "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to [Garcia] even though these defendants knew or should have known that the condition posed an excessive risk to health or safety." Defs. Suppl. Mem. in Supp. at 14.  Defendants argue that Garcia was placed in the RHU because he threatened staff earlier in the day.  <u>Id.</u> at 13.  Garcia was segregated from the officer that had antagonized him earlier in the day.  <u>Id.</u> at 13–14.  Finally, pursuant to policy, Garcia was placed on Behavioral Observation Status ("BOS") and was to be observed every 15 minutes.  <u>See id.</u> at 14.  The purpose of BOS is to mitigate

an inmate's "maladaptive" behaviors while keeping the inmate and staff safe.  <u>See</u> Pl.

Suppl. L.R. 56(a) at 12 ¶ 18.

Garcia argued in response that GCI is a facility specifically used to house

inmates with mental health issues, and that the defendants therefore should have

known that Garcia had been diagnosed with mental health issues requiring medication

and treatment.  Pl. Second Mem. in Opp'n at 18.  Moreover, Garcia argues that the

behavior he exhibited during the relevant time should further have put defendants on

notice as to his mental health needs.  <u>Id.</u>  The defendants' burden is to show that there

is no material issue of fact as to whether the defendants recklessly failed to act with

reasonable care to mitigate the risk that the failure to provide medication posed to

Garcia, even though the defendants knew, or should have known, that the failure to

provide him medication posed an excessive risk to Garcia's health or safety.  <u>See</u>

<u>Darnell</u>, 849 F.3d at 29.

Defendants failed to show that there is no issue of material fact as to whether

they acted with reckless disregard of an excessive risk to Garcia's health and safety.

The court concludes that, based on Garcia's documented behavior during the time

leading up to and including his placement in RHU, combined with Garcia's documented

history of self-harm, and evidence he repeatedly requested medicine, a reasonable jury

could find that the defendants recklessly disregarded an excessive risk to Garcia's

health and safety when they ignored his requests for medication and instead placed

Garcia on in-cell restraints.

The defendants' Motion for Summary Judgment is therefore denied as to

Garcia's claim of deliberate indifference to mental health needs.

2.     Deliberate Indifference to Health and Safety

Garcia alleges that defendants Hurdle, Ross, Burritt, Parnisakul, and Byars acted with deliberate indifference to a harmful condition and retaliated against Garcia by placing him on in-cell restraints that prevented him from standing fully upright or using the toilet.  See Pl. Second Mem. in Opp'n at 19.  The court already concluded that summary judgment is appropriate as to the deliberate indifference claim against defendant Hurdle because of Garcia's failure to exhaust administrative remedies.  See, supra, at 17–18.


a.     Objective Requirement

The first prong of the deliberate indifference standard is whether there was an objective deprivation.  To establish an objective deprivation, the inmate must prove that the challenged conditions, evaluated in light of contemporary standards of decency, alone or in combination pose an unreasonable risk of serious damage to his health.  Darnell, 849 F.3d at 30.  The Second Circuit has held that "the proper lens through which to analyze allegedly unconstitutional unsanitary conditions of confinement is with reference to their severity and duration, not the detainee's resulting injury."  Id. (citing Willey v. Kirkpatrick, 801 F.3d 51, 68, (2d Cir. 2015)).  There is no "bright-line durational requirement for a viable unsanitary-conditions claim."  Willey, 801 F.3d 68.  Nor is there a minimal level of unsanitary conditions required.  See id.

Defendants argue in support of summary judgment that: (1) Garcia's behavior caused him to be placed in restrictive housing; (2) Garcia's placement in RHU was mandated by applicable Administrative Directives; and (3) there is "absolutely no evidence" that the defendants intentionally restrained Garcia in a manner that would

prevent him from standing upright or using the toilet.  <u>See</u> Defs. Suppl. Mem. in Supp. at 15.  The defendants provide documentary evidence to support their argument, including (1) a video showing Garcia's gown was open in the rear, which suggests that he would be able to use the toilet (if he could reach it), <u>see</u> DVD-GCI-V-14-276 at 50:50; (2) restraint logs showing checks of Garcia's cell were conducted at 15 minute intervals, and that Gray saw Garcia pacing in the cell, <u>see</u> Defs. Suppl. Mot. Summ. J., Ex. 3, Attach. D (Restraint Checklist) (Doc. No. 81-9); (3) a sworn statement from Ross stating that the restraints were applied in a manner that would allow Garcia mobility, <u>see</u> <u>id.</u> at Ex. 4 (Decl. of Richard Ross) (Doc. No. 81-10) ¶¶ 20–24; and (4) a sworn statement from Hurdle that he observed no feces or urine on Garcia's body, <u>see</u> Defs. Mot. Summ. J., Ex. 8 (Decl. of George Hurdle) (Doc. No. 38-10) ¶ 15.

    In response, Garcia argues first, that the manner in which he was chained was contrary to the requirements of applicable Administrative Directives, specifically AD 6.5, and that Byars, Ross, Parnisakul, and Burritt were all "personally involved" in the application of in-cell restraints on Garcia "and were in a position to recommend correction of the length of the tether chain."  Pl. Second Mem. in Opp'n at 19.  Garcia further argues that, when Yerkes checked the wrist and ankle cuffs, she failed to have Garcia stand to ensure that the chain length allowed Garcia to stand upright.  <u>Id.</u> at 19– 20.  Garcia does not allege, nor does the evidence suggest that he suffered any physical injuries or harm due to his placement on in-cell restraints.  Rather, he avers that he was humiliated because the restraints prevented him from standing upright or using the toilet.  Pl. Second Mem. in Opp'n at 20.

The court's role at this stage of litigation is not to make findings of fact. Rather, it is to determine if a material issue of fact exists. The court concludes that the defendants failed to meet their burden to show there is no material issue of fact as to whether Garcia suffered an objective deprivation. Garcia's sworn statement alone creates a genuine issue of material fact as to this question.

b.      Subjective Requirement

The court also concludes that there is a dispute of material fact as to whether the defendants acted with deliberate indifference to the risk to Garcia's health resulting from placing Garcia on in-cell restraints. The defendants argue that the decision was made to place Garcia on in-cell restraints to control Garcia's disruptive behavior and to maintain order in the facility. Defs. Suppl. Mem. in Supp. at 18. They provide ample documentary evidence of Garcia's behavior warranting placement on in-cell restraints on the day in question.

The defendants do not contest that they were all present and involved in the process of placing Garcia on in-cell restraints, and defendants conceded that Yerkes failed to check if Garcia was able to stand after he was placed on in-cell restraints. See Defs. Mem. in Supp. at 14–15. However, the defendants contend that, even if this conduct was negligent, it was not reckless. Id. Defendants further argue that, "there is no evidence that [they] intentionally imposed the condition in which Garcia had been placed, nor is there any evidence that these defendants recklessly failed to act with reasonable care in the application of restraints . . . ." Id. at 16.

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's

claim." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18

(2d Cir. 1995). The court concludes that the defendants have met their initial burden to

show a lack of material issue fact. The burden to show that an issue of fact exists

therefore shifts to Garcia. See Scott v. Harris, 550 U.S. 372, 380 (2007) ("[w]hen the

moving party has carried its burden under Rule 56(c), its opponent must do more than

simply show that there is some metaphysical doubt as to the material facts.")

Garcia responds by arguing that the defendants "acted with deliberate

indifference to a harmful condition and retaliated against Garcia by placing him [on] in-

cell restraints . . . ." Pl. Second Mem. in Opp'n at 19. Garcia swore in his Affidavit that,

after being placed on the in-cell restraints, he "could not stand fully erect or remove the

safety gown to use the toilet," and that as a result, he urinated and defecated on

himself. Affidavit of Jose Garcia (Doc. No. 83-2) ¶ 19. The defendants' admission that

they assisted in the application of the in-cell restraints, the admission that LPN Yerkes

failed to confirm Garcia's ability to stand erect, and Garcia's sworn statement that the

manner in which he was restrained prevented him from standing upright or using the

toilet, raise a material issue of fact as to whether the defendants recklessly failed to act

with reasonable care in the application of the in-cell restraints. The defendants' Motion

for Summary Judgment is therefore denied as to Garcia's claim that Ross, Burritt,

Parnisakul, and Byars acted with deliberate indifference to a harmful condition.

C.    Qualified Immunity

Garcia's remaining claims are (1) the Fourteenth Amendment claim of deliberate

indifference to mental health needs against Gray, Yerkes, Bertulis, and Marek, and

(2) the Fourteenth Amendment claim of deliberate indifference to Garcia's health and

safety against Ross, Burritt, Parnisakul, and Byars. The defendants argue that they are

entitled to summary judgment on the basis of qualified immunity.  Defendants briefed

this issue in their First Memorandum in Support of the Motion for Summary Judgment

(Doc. No. 38-1).  See Defs. Mem. in Supp. at 22.  While the defendants re-alleged in

their supplemental filings that they were entitled to qualified immunity, see Defs. Suppl.

Mem. in Supp. at 1, they did not provide any substantive briefing on this issue in their

Supplemental Memorandum in Support.  Nor did Garcia address the issue in his

supplemental filings.  The defendants' original argument in support of qualified immunity

is sparse; while the defendants correctly state the legal standard, see Defs. Mem. in

Supp. at 22–25, the factual examination is limited.  See id. at 26.

In resolving questions of qualified immunity at summary judgment, courts engage

in a two-pronged inquiry.  The first prong "asks whether the facts, taken in the light most

favorable to the party asserting the injury . . . show the officer's conduct violated a

federal right[,] . . . [and] [t]he second prong of the qualified-immunity analysis asks

whether the right in question was clearly established at the time of the violation."

Raspardo v. Carlone, 770 F.3d 97, 113 (2d Cir. 2014) (alterations in original).  The

Supreme Court has held that a court may consider these two questions in either order

and, if it determines that one prong is not satisfied, it need not reach the other.

See Pearson v. Callahan, 555 U.S. 223, 236 (2009).  Defendant officials are therefore

entitled to summary judgment when they can establish that there is no material issue of

fact as to either "(1) a constitutional right [being] violated or (2) the right was not [being]

clearly established [at the time of the violation]."  Raspardo, 770 F.3d at 113.  "The

relevant, dispositive inquiry in determining whether a right is clearly established is

whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001).

Even where a right is clearly established, a defendant official is entitled to qualified immunity if "it was objectively reasonable for the defendant to believe that his action did not violate such law." See Poe v. Leonard, 282 F.3d 123, 133 (2d Cir. 2002). An officer's actions are objectively reasonable if "officers of reasonable competence could disagree on the legality of the defendants' actions." Ford v. Moore, 237 F.3d 156, 162 (2d Cir. 2001). If the court determines the only conclusion a rational jury could reach is that reasonable officers at the time of the alleged constitutional violation would disagree about the legality of the defendants' conduct under the circumstances, summary judgment for the officers is appropriate. See Lennon v. Miller, 66 F.3d 416, 421 (2d Cir. 1995).

Whether a defendant's conduct was objectively reasonable, that is, "whether a reasonable official in the defendant's position would reasonably believe his conduct did not violate a clearly established right," is a mixed question of law and fact. Outlaw v. City of Hartford, 884 F.3d 351, 367 (2d Cir. 2018). "Although a conclusion that the defendant official's conduct was objectively reasonable as a matter of law may be appropriate where there is no dispute as to the material historical facts, if there is such a dispute, the factual questions must be resolved by the factfinder." Kerman v. City of New York, 374 F.3d 93, 109 (2d Cir. 2004) (citations omitted).

The court notes that, under Second Circuit law at the time of the alleged harm, courts analyzed pretrial detainee claims of deliberate indifference under the Eighth Amendment standard. See Caiazzo v. Koreman, 581 F.3d 63, 71 (2d Cir. 2009),

overruled by Darnell v. Pineiro, 849 F.3d 17 (2d Cir. 2017). To state an Eighth Amendment claim based on conditions of confinement, an inmate must allege that: (1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety. Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013). To meet the subjective requirement, a plaintiff must prove that officers knew of, and disregarded, an excessive risk to health or safety. Id. Evidence that a risk was "obvious or otherwise must have been known to a defendant" may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk. Id. (citation omitted).

The court addresses whether the defendants are entitled to qualified immunity as to the remaining claims, the deliberate indifference to mental health needs claims and deliberate indifference to harmful conditions claims, separately.

a. Qualified Immunity from Claims of Deliberate Indifference to Mental Health Needs

Gray, Yerkes, Bertulis, and Marek argue they are entitled to qualified immunity as to Garcia's claim of deliberate indifference to his mental health needs. The court first addresses whether the facts, viewed in the light most favorable to the plaintiff, show that the officer's conduct violated a constitutional right. See Gilles v. Repicky, 511 F.3d 239, 244 (2d Cir. 2007) (quoting Walczyk v. Rio, 496 F.3d 139, 154 (2d Cir. 2007)).

The Supreme Court has held that deliberate indifference to serious medical needs violates prisoners' constitutional rights, whether "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or

31

delaying access to medical care or intentionally interfering with the treatment once prescribed." See Estelle v. Gamble, 429 U.S. 97, 104–05 (1976). This right extends to the provision of mental health care. See Langley v. Coughlin, 888 F.2d 252, 254 (2d Cir.1989). Garcia swore in his Affidavit that he repeatedly requested mental health medication, and that the defendants ignored his requests. See Affidavit of Jose Garcia (Doc. No. 83-2) ¶ 16. Defendants deny that Garcia made any requests.

The court cannot resolve this dispute of fact at summary judgment. See Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) (holding that in addressing a qualified immunity argument, "courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment," and reiterating that "a judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial") (internal quotations omitted). Viewing the facts in the light most favorable to Garcia, the court concludes that a rational jury could find that the failure of the defendants to provide mental health medication, despite Garcia's repeated requests, violated Garcia's constitutional right to adequate mental health care.

The second prong of the qualified immunity analysis is whether the constitutional right was clearly established. The right to be free from deliberate indifference to one's serious medical needs has long been established since the United States Supreme Court's decision in Estelle v. Gamble, 429 U.S. at 104–05. And, as the court noted above, this right applies to mental health needs. This right was clearly established at the time of the alleged unconstitutional conduct. As the court has noted, however, even where a right was clearly established, a defendant will be entitled to qualified immunity if, at the time of the alleged acts, it would have been "objectively reasonable for the

defendant to believe that his action did not violate such law." <u>Poe v. Leonard</u>, 282 F.3d at 133.

Defendants Yerkes, Marek, and Bertulis argue "it was objectively reasonable for the mental health nurses [LPN Yerkes, CSW Marek, and CSW Bertulis] to communicate with plaintiff regarding his mental state, but the administration of medication is beyond their authority." Defs. Mem. in Supp. at 26. Clearly, prescribing or ordering medication is the responsibility of a doctor. The defendants' argument, however, does not address the obligations of others, like prison guards and non-physicians, to seek to obtain medical treatment or medication from physicians when an inmate requests it and the circumstances support the request. <u>See</u>, <u>supra</u>, at 31. Further, the defendants make no argument as to why qualified immunity applies to Garcia's claim of indifference to mental health needs against Corrections Officer Gray, except for a blanket statement that it was objectively reasonable for the defendant corrections officers to follow prison procedure. <u>See</u> Defs. Mem. in Supp. at 26. That argument again misses the point: corrections officers have a duty to seek a physician's assistance in circumstances that call for medical treatment, including the procurement and administration of medication. <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. at 104–05 (holding that indifference to serious medical needs violates the Eighth Amendment "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or <u>by prison guards in intentionally denying or delaying access to medical care</u> or intentionally interfering with the treatment once prescribed") (emphasis added). Moreover, the defendants offer no evidence or case law to support their argument. Accepting, for the purpose of summary judgment, that Garcia requested medication and that Corrections Officer Gray, Nurse Yerkes,

CSW Bertulis, and CSW Marek ignored Garcia's requests, the court concludes that, under the law at the time, no objectively reasonable corrections officer, nurse, or social worker would disagree that such inaction was a violation of Garcia's constitutional rights. Therefore, the defendants' Motion for Summary Judgment on the basis of qualified immunity as to Garcia's claim of deliberate indifference to mental health needs is denied.

        b.      Qualified Immunity from Claims of Deliberate Indifference to Health and Safety

Defendants Parnisakul, Burritt, Ross, and Byars argue that they are entitled to qualified immunity on Garcia's claim that they were deliberately indifferent to his health and safety and subjected him to unconstitutional conditions of confinement when they caused him to be placed on in-cell restraints in a manner that prevented him from standing upright and using the toilet. Defs. Mem. in Supp. at 26. The court first addresses whether the facts, viewed in the light most favorable to the plaintiff, show that the officers' conduct violated a constitutional right.

Garcia alleged that he was placed on in-cell restraints in a manner that prevented him from standing and from reaching or using the toilet. He affirmed that, as a result, he was unable to stand upright in his cell for nine hours, and that he was forced to urinate and defecate on himself. While prisoners do not have a constitutional right to comfortable prison conditions, they do have a right to be free from unnecessary and wanton infliction of pain. See Hope v. Pelzer, 536 U.S. 730, 737 (2002). Moreover, the Second Circuit has "long recognized that unsanitary conditions in a prison cell can, in egregious circumstances, rise to the level of cruel and unusual punishment." Walker v. Schult, 717 F.3d at 127 (2d Cir. 2013).

While the defendants claim that Garcia was seen pacing in his cell, <u>see</u> Defs. Suppl. Mot. Summ. J., Ex. 3, Attach. D (Restraint Checklist) (Doc. No. 81-9), and they deny that Garcia urinated or defecated on himself, the court, as noted "may not resolve genuine disputes of fact in favor of the party seeking summary judgment." <u>Tolan v. Cotton</u>, 134 S. Ct. 1861, 1866 (2014).  Viewing the evidence in the light most favorable to Garcia, the court concludes that a rational jury could find that the defendants placed Garcia on in-cell restraints in a manner that prevented him from standing or relieving himself in a sanitary manner for nine hours.  Such conduct was sufficiently serious to constitute a constitutional deprivation at the time.

The second prong of the qualified immunity analysis is whether the right that the defendants allegedly violated was clearly established at the time of their conduct, that is, whether "the rights that plaintiff asserts were violated [were] clearly established in a particularized sense, so that a reasonable official would know that his actions violated plaintiff's rights. <u>P.C. v. McLaughlin</u>, 913 F.2d 1033, 1039 (2d Cir. 1990) (internal quotation omitted).  Garcia claims that his placement on in-cell restraints in a manner that prevented him from standing was cruel and unusual punishment.  As noted above, <u>see</u>, <u>supra</u>, at 34, clearly established law at the time of the incident provided that inmates had an Eighth Amendment right to be free from "unnecessary and wanton infliction of pain." <u>Hope v. Pelzer</u>, 536 U.S. at 737 (2002).  Garcia also claims that his inability to reach the toilet, causing him to soil himself, constituted cruel and unusual punishment.  The Second Circuit had clearly established that inmates could not be "denied the minimal civilized measure of life's necessities" at the time relevant to this

case.  See Walker v. Schult, 717 at 125.  Thus, the right upon which his claim is based was clearly established at the time in question.

As noted above, even where a right is clearly established, a defendant will be entitled to qualified immunity if, at the time of the alleged acts, it would have been "objectively reasonable for the defendant to believe that his action did not violate such law."  Poe v. Leonard, 282 F.3d at 133.  In other words, the defendants are entitled to qualified immunity if reasonable officers at the time would disagree that the defendants' conduct violated Garcia's constitutional rights.

The first question is whether it was objectively reasonable for the officers to believe that Garcia's deprivation was not sufficiently serious to meet the objective element of an Eighth Amendment claim of deliberate indifference.  At the time of the events in question, the Second Circuit had held that there was "no static test to determine whether a deprivation is sufficiently serious, [and that] the conditions themselves must be evaluated in light of contemporary standards of decency."  Jabbar v. Fischer, 683 F.3d 54, 57 (2d Cir. 2012) (citing Blissett v. Coughlin, 66 F.3d 531, 537 (2d Cir.1995) (alterations and quotations omitted)).  The Second Circuit had also held that "prisoners may not be deprived of their basic human needs," including food, clothing, shelter, and reasonable safety.  See id.  Garcia alleged that the defendants placed him on in-cell restraints in a manner that prevented him from standing upright or using a toilet for nine hours, causing him to urinate and defecate on himself.  The ability to stand and move sufficiently to relieve oneself in a sanitary manner is a basic human need, and denial of such ability overnight, causing an individual to urinate and defecate on themselves, constitutes a violation of society's general standards of decency.  The

court concludes that, if the jury credits Garcia's testimony, the alleged conditions would amount to a serious deprivation of basic needs sufficient to meet the first element of an Eighth Amendment claim of deliberate indifference.

The second question is whether defendants Parnisakul, Burritt, Ross, and Byars are entitled to qualified immunity because it was objectively reasonable for the defendants to believe that their conduct did not violate Garcia's Eighth Amendment right. As noted, to satisfy the subjective deliberate indifference element under the Eighth Amendment, a plaintiff must prove that officers knew of, and disregarded, an excessive risk to health or safety.

As evidence, Garcia points to admissions by defendants Byars, Ross, Parnisakul, and Burritt, that each of the defendants either assisted in placing Garcia on in-cell restraints, or secured Garcia while other staff members placed him on in-cell restraints. See Pl. Second Mem. in Opp'n at 19. Garcia argued that the corrections officers were therefore "personally involved in the application of the in-cell restraints and were in a position to recommend correction of the length of the tether chain." Pl. Second Mem. in Opp'n at 19. In his Affidavit, Garcia affirmed that he was "walked into cell F125 and placed in in-cell restraints," and that he "never stood up during or after the time that the in-cell restraints were being applied." See Affidavit of Jose Garcia (Doc. No. 83-2) ¶ 18. Garcia further affirmed that "[t]he video shows that LPN Yerkes checks the wrist and ankle cuffs without asking [Garcia] to stand." Id. (citing DVD-GCI-V-276). Viewing the evidence in the light most favorable to Garcia, and drawing all reasonable inferences in his favor, the court concludes that a rational jury could find that defendants Byars, Ross, Parnisakul, and Burritt were in the cell when Garcia was

placed on in-cell restraints, that they assisted in his placement on in-cell restraints, and that they were present when LPN Yerkes checked the restraints and failed to have Garcia stand.  The court further concludes that a rational jury could find that the defendants knew of and disregarded an excessive risk to Garcia's health and safety when they failed to ensure that Garcia was able to stand upright in his cell or reach the toilet, or that the risk to Garcia's health and safety was "obvious or otherwise must have been known to [the] defendants."  Walker v. Schult, 717 F.3d at 125.  Based on such a factual finding, this court could not conclude that reasonable officers at the time of the alleged constitutional violation would disagree about the legality of the defendants' conduct under the circumstances.  To the extent that there are issues of disputed material fact as to what the defendants faced or perceived, including whether the defendants were able to perceive an obvious, excessive risk to Garcia's health and safety, that question of fact must be resolved by the jury before this court can determine, as a matter of law, "whether qualified immunity attaches on those facts."  See Outlaw v. City of Hartford, 884 F.3d at 367 (emphasis in original).

Because the court cannot conclude that the only conclusion a rational jury could reach is that reasonable officers would disagree as to whether the conduct of defendants Parnisakul, Burritt, Ross, and Byars violated a clearly established right under the law of this Circuit at the time of the alleged violation and, under the circumstances the defendants faced, summary judgment on qualified immunity is inappropriate.  See Lennon v. Miller, 66 F.3d at 420 ("If any reasonable trier of fact could find that the defendants' actions were objectively unreasonable, then the defendants are not entitled to summary judgment.").  Thus, the defendants' Motion for

Summary Judgment, as to Garcia's Fourteenth Amendment claims of deliberate indifference to health and safety and subjection to unconstitutional conditions of confinement, is denied on the basis of qualified immunity.

## V. CONCLUSION

For the foregoing reasons, defendants' Motion for Summary Judgment (Doc. No. 38) and Supplemental Motion for Summary Judgment (Doc. No. 81) are granted in part and denied in part. Summary Judgment is **GRANTED** as to Garcia's Fourteenth Amendment claim of deliberate indifference to his health and safety and subjection to unconstitutional conditions of confinement by Hurdle based on failure to exhaust, and **DENIED** as to Garcia's Fourteenth Amendment claim of deliberate indifference to his health and safety and subjection to unconstitutional conditions of confinement by Parnisakul, Burritt, Ross, and Byars based on qualified immunity. Summary Judgment is **GRANTED** as to Garcia's First Amendment claim of retaliation by Hurdle, Parnisakul, Burritt, Ross, and Byars based on failure to exhaust. Summary Judgment is **DENIED** as to Garcia's Fourteenth Amendment Claim of deliberate indifference to his mental health needs by Gray, Marek, Bertulis, and Yerkes.


**SO ORDERED.**

Dated at New Haven, Connecticut this 7th day of November, 2018.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge